**UNITED STATES of America ex rel. Burwell L. JONES, Appellant,**

v.

**Alfred T. RUNDLE, Superintendent.**

**No. 19502.**

United States Court of Appeals, Third Circuit.

Argued Nov. 19, 1971.

Decided Dec. 28, 1971.

Edith G. Laver, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellant.

Thomas W. Jennings, Asst. Atty. Gen., Philadelphia, Pa., (J. Shane Creamer, Atty. Gen., Herbert Monheit, Asst. Atty. Gen., by Larry Elliot Jones, Asst. Atty. Gen., Philadelphia, Pa., on the brief) for appellee.

Before BIGGS, ADAMS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The sole issue in this case is whether the district court erred in granting summary judgment against an untried prisoner, confined to a maximum security cell as a matter of routine procedure, who alleged that the prison authorities thereby denied him his constitutional right to practice his religion freely. It is undisputed that prison regulations provide that persons confined in maximum security may not attend congregate religious services.

Plaintiff brought this action under the Civil Rights Act, 42 U.S.C. § 1983 (1970). He alleged that he came into custody on February 1, 1970,[1] and was detained in the Montgomery County jail in lieu of bail. Because that jail was overcrowded, he was transferred on March 4, 1970, to the State Correctional Institution located at Graterford, Pennsylvania.[2] Plaintiff alleges that although he was never a disciplinary problem and had never broken prison rules or regulations, he was placed in a maximum security cell, and defendant admits: "As an untried prisoner [Jones] was not allowed to be placed in our population with other prisoners or with sentenced prisoners." The plaintiff further alleged that while he was in maximum security confinement, he was denied the right to attend congregate Catholic religious services. On May 14, 1970, according to defendant, plaintiff's status was changed to that of parole violator, and he was transferred to the Classification and Diagnostic Center of the prison, where he was allowed to attend congregate religious services.

The district court, on May 7, 1970, granted plaintiff's petition to proceed *in forma pauperis*, holding that insofar as the complaint alleged "an unwarranted

---

1. The reason he was incarcerated is not clear from the record.

2. Defendant, Alfred T. Rundle, is the Warden at Graterford.

denial of a prisoner's right to practice his religion," a cause of action had been stated.[3] The defendant filed an answer admitting that plaintiff was denied the privilege of attending congregate services between March 4, 1970, and May 14, 1970, and alleging that a Chaplain visited plaintiff's "place of confinement on a daily basis." Defendant also attached a statement from the Chaplain to the effect that Jones is not a member of the Catholic Church.[4]

■ Plaintiff Jones then filed a "Motion for Exceptions." Since Jones pleaded *pro se* for the protection of his civil rights, this pleading must be viewed "without regard for technicalities."[5] and can, therefore, be treated as an amendment to his complaint. In it, he alleges that although he is not a "baptised member of the Catholic Church . . . [he] is a faithful practitioner of the Catholic faith" who attends mass faithfully and has completed "caticism [sic] and can be baptised into the church at any time." He also denied that the Catholic Chaplain visited his cell-block on a daily basis. Three other prisoners filed supporting affidavits.

■ On July 17, 1970, the district court issued a Memorandum Opinion stating that the defendant had moved for summary judgment[6] and that plaintiff would be permitted to file a written statement in opposition to that motion. Jones then filed a "Written Opposition to Defendants Motion for Summary Judgment" on July 30, 1970, in which he controverts many of defendant's allegations and reiterates many of his own.[7] On September 23, 1970, the district court granted the motion for summary judgment on the ground that the facts in dispute were not material and that the defendant was entitled to judgment as a matter of law.

■ The district court's ruling that the complaint stated a cause of action under the Civil Rights Act was clearly correct. Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964), on remand, 382 F.2d 518 (7th Cir. 1967); *accord*, Wilson v. Prasse, 404 F.2d 1380 (3d Cir. 1968); Sewell v. Pegelow, 291 F.2d 196 (4th Cir. 1961). *See* Note, Prisoners' Rights Under Section 1983, 57 GEO.L.J. 1270, 1276 (1969). This, however, does not mean that a prisoner's right to practice his religion is absolute. Such right may be reasonably restricted in order to facilitate the maintenance of proper discipline in the prison. Sharp v. Sigler, 408 F.2d 966 (8th Cir. 1969).[8] But where

3. The district court cited Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964), on remand, 382 F.2d 518 (7th Cir. 1967).

4. This statement does not appear in the record and its receipt by the district court is not annotated on the docket.

5. Picking v. Pennsylvania R. Co., 151 F.2d 240, 244 (3rd Cir. 1945), cert. denied, 332 U.S. 776, 68 S.Ct. 38, 92 L.Ed. 361 (1947); *accord*, Beard v. Stephens, 372 F.2d 685, 689 (5th Cir. 1967); S.E.C. v. Vanco, Inc., 283 F.2d 304, 305 (3rd Cir. 1960); Moore v. Coats Co., 270 F.2d 410, 411 (3rd Cir. 1959).

6. That motion and its supporting documents are not in the record, and the district court's docket does not indicate that they were filed. The docket does note that defendant's motion for summary judgment was filed on September 3, 1970, but the record does not contain supporting affidavits, and the docket does not show that they were filed.

7. Interestingly, plaintiff repeats his claim that he was not an untried prisoner, but rather, was being held as a parole violator and therefore should never have been placed in maximum security in the first place. If assignment to an appropriate cell-block based on the reason for detention is a ministerial act of the warden absent some breach of or threat to discipline, then negligence in performance of that ministerial duty resulting in an infringement of a constitutional right might be actionable under the Civil Rights Act. *See* Monroe v. Pape, 365 U.S. 167, 180, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) Note, Prisoners Rights Under Section 1983, 57 GEO.L.J. 1270, 1290–1294 (1969).

8. In Konigsberg v. Ciccone, 285 F.Supp. 585 (W.D.Mo.1968), the district court ordered that prison officials provide es-

religious freedoms are curtailed by prison officials, the Government must show compelling justification for such deprivations. Barnett v. Rodgers, 133 U.S. App.D.C. 296, 410 F.2d 995 (1969); *accord,* Walker v. Blackwell, 411 F.2d 23 (5th Cir. 1969), *citing* Jackson v. Godwin, 400 F.2d 529 (5th Cir. 1968), *and* Long v. Parker, 390 F.2d 816 (3d Cir. 1968). If, in the case of convicted prisoners, "stringent standards are to be applied to governmental restrictions [of religious practices], and rigid scrutiny must be brought to bear on the justifications for encroachments on such rights,"[9] then it seems to follow that, in the case of an untried detainee who is not a disciplinary problem, even more rigid standards ought to be brought to bear.

■ The error of the district court resides in its granting defendant's motion for summary judgment. Summary judgment is proper only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P.Rule 56(c). "Any doubt as to the existence of a genuine issue of fact is to be resolved against the moving party. . . . Documents filed in support of a motion for summary judgment are to be used to determine whether issues of fact exist and *not* to decide the fact issues themselves." Krieger v. Ownership Corp., 270 F.2d 265, 270 (3d Cir. 1959); *accord,* Bowman Steel Corp. v. Lumbermens Mutual Casualty Co., 364 F.2d 246 (3d Cir. 1966); Janek v. Celebrezze, 336 F.2d 828 (3d Cir. 1964). The burden of demonstrating the justification for a motion for summary judgment lies with the movant. Adickes v. S. H. Kress & Co., 398 U.S. 144, 153–

corts for maximum security prisoners desiring to attend Jewish congregate services unless it appeared that such attendance was medically inadvisable, that the prisoner was too dangerous, or that such attendance would "substantially and adversely affect the security, or safety or maintenance of orderly conditions within the institution." *Id.* at 595–596.

161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1969).

■ Here, viewing the inferences flowing from the facts alleged in the complaint "in the light most favorable to the party opposing the motion [for summary judgment],"[10] we conclude that defendant has failed to demonstrate his entitlement to summary judgment. For example, it can be inferred that plaintiff has alleged that the prison regulations are overbroad and that the evidence will show that they were not reasonably related to the maintenance of proper order in the prison, or that they were unreasonably applied to him. In addition, if daily visits by the Chaplain would satisfy the constitutional standards, a dispute still exists whether those visits were in fact made. Furthermore, defendant has placed into controversy the bona fides of plaintiff's claim that he is a practicing Catholic. Triable issues exist, therefore, as to the breadth and reasonableness of the prison regulations as applied to untried detainees who do not present disciplinary problems, whether the Chaplain conducted daily visits to the maximum security cell-block, and also, whether plaintiff was in fact a Catholic at all.

■ Although the district court did not ground its action on mootness, the defendant argued both here and below that the case was moot because plaintiff at the time of argument could have attended congregate religious services. However, we have noted that alleviation of an alleged constitutional violation does not moot a prisoner's claim for actual and punitive damages. Wilson v. Prasse, 404 F.2d 1380, 1382 n.3 (3d Cir. 1968).[11] And in view of the recent Su-

9. Jackson v. Godwin, 400 F.2d at 541.

10. Adickes v. S.H. Kress & Co., *supra,* at 158–159, 90 S.Ct. at 1609, *quoting* United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

11. Section 1983 actions should "be read against the background of tort liability that makes a man responsible for the natural consequences of his actions."

preme Court decision in Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L. Ed.2d 142, and the earlier case of Houghton v. Shafer, 392 U.S. 639, 640, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968), we do not deem abstention appropriate in a case where a state prisoner alleges a violation of a fundamental constitutional right. *See also* Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); LeVier v. Woodson, 443 F.2d 360 (10th Cir. 1971); Pierce v. LaVallee, 293 F.2d 233, 235–236 (2d Cir. 1961).

Accordingly, the judgment of the district court will be reversed, and this case will be remanded for further proceedings consistent with this opinion.

Monroe v. Pape, 365 U.S. 163, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961). The underlying philosophy of tort law that allows pecuniary recovery for injuries, even after they have healed, is that the plaintiff should be compensated for the harm he has suffered. Money damages may constitute appropriate relief in Section 1983 cases. Monroe v. Pape, *supra;* Sostre v. McGinnis, 442 F.2d 178, 205 (2nd Cir. 1971); *accord,* Basista v. Weir, 340 F.2d 74 (3rd Cir. 1965).