Janet S. GUTHRIE, Plaintiff,

v.

BLUE RIDGE SAVINGS
BANK, Defendant.

No. 197CV353–C.

United States District Court,
W.D. North Carolina,
Asheville Division.

Feb. 4, 2000.

Janet S. Guthrie, Asheville, NC, pro se.

Robert B. Long, Jr., William A. Parker, Long, Parker & Warren, P.A., Asheville, NC, for Defendant.

## MEMORANDUM OF DECISION

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the court upon defendant's Motion for Summary Judgment. Having considered that motion and reviewed the pleadings, the court enters the following findings, conclusions, and decision.

## FINDINGS AND CONCLUSIONS

### I.  Applicable Standard

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial.  Upon the moving party's meeting that burden, the nonmoving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*"  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving [sic] party, there is no "genuine issue for trial."

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted; emphasis in the original) (quoting Fed.R.Civ.P. 56).  There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The possibility, however remote, that plaintiff may have alleged a constitutional violation merits more than bald denials and summary dismissals.  *Wooten v. Shook,* 527 F.2d 976, 977–78 (4th Cir.1975).

By reviewing substantive law, the court may determine what matters constitute material facts.  *Anderson, supra.*  "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment."  *Id.* at 248, 106 S.Ct. 2505.  A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  *Id.*

[T]he court is obliged to credit the factual asseverations contained in the material before it which favor the party resisting summary judgment and to draw inferences favorable to that party if the inferences are reasonable (however improbable they may seem).

*Cole v. Cole,* 633 F.2d 1083, 1092 (4th Cir.1980).  Affidavits filed in support of defendant's Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves.  *United States ex rel. Jones v. Rundle,* 453 F.2d 147 (3d Cir.1971).  When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper.  *Davis v. Zahradnick,* 600 F.2d 458 (4th Cir.1979).

### II.  Factual Background

The following alleged facts are drawn from the allegations contained in plaintiff's complaint, and have been considered in a light most favorable to plaintiff.  At all relevant times, plaintiff has been an employee of defendant savings bank.  Although represented by counsel initially, *pro se* plaintiff contends that the bank demoted her based upon her gender, thereby violating protections afforded by Title VII. Defendant denies that gender or any other unlawful criteria was considered; rather, it alleges that plaintiff was demoted due to her poor performance that resulted in an unfavorable audit and other concerns raised by the Office of Thrift Supervision ("OTS").

Beginning in 1993, plaintiff was employed by defendant as an assistant to its then president, Hayes Martin.  During 1995, plaintiff took on additional responsibilities, including assembly of mortgage loan packages, for which she received a salary of $30,000 per year and $37.50 for each loan she assembled that actually closed.

While plaintiff contends that she did so under pressure, it is undisputed in the record now presented that on February 2, 1996, she signed a contract with defendant making her the savings bank's "Mortgage Loan Originator." *See* Hunter Affidavit, Exhibit H. The essential terms of that contract provided that plaintiff was to be an independent contractor and her compensation under the contract was to be one-half of the origination fee of all loans she originated that actually closed. *Id.* Under that contract, plaintiff actually received $83,152.37 in compensation. *See* Request for Admission # 7.

It is also undisputed that plaintiff originated two types of loans under the February 2, 1996, contract: (1) in-house loans, which were underwritten and approved by defendant; and (2) secondary-market loans, which were originated by the savings bank, but brokered to other financial institutions. Although plaintiff was originating both kinds of loans, it is undisputed that the final approval of in-house loans, with some restrictions, was delegated by the board of directors to Hayes Martin, the savings bank president. *See* Taylor Aff. Secondary-market loans were not subject to Mr. Martin's approval, but to the criteria and standards set by other institutions. Hunter Aff.

In the summer of 1996, the OTS and the North Carolina Savings Institutions Division conducted a joint examination of the savings bank and reviewed the loan files. Taylor Aff. As to the savings bank's loan files, the examination uncovered improper processing and supporting documentation and violation of OTS regulations concerning specific loans or groups of loans. It is not disputed that the type and level of deficiencies were particular to plaintiff's loans, but not to loans originated by others at the savings bank. Plaintiff's "problem loans" were centered on two real-estate developments, where in addition to dispro-portionate concentration of loans in a particular venture, plaintiff did not provide information that such loans were being made to relatives and associates of the developers of such projects—deficiencies which included inadequate documentation and financial analysis. Taylor Aff.; Hunter Aff. Due to the findings by the federal and state examiners and those of an independent review, the chairman of the board of directors, Charles Taylor, met with OTS officials in August 1996. As a result of that examination meeting, Mr. Taylor took two immediate personnel actions: (1) he suspended the bank president, Hayes Martin (a male employee), which resulted in his resignation within a month; and (2) he terminated plaintiff's contract as mortgage-loan originator and reassigned her to her former position of loan processor at or about her former salaried compensation, with benefits.

With the position of mortgage-loan originator vacant, the new president of the savings bank, John Hunter, hired a female to fill the position. That employee worked at the position for one week, then resigned. After the savings bank was reexamined in early 1997, Mr. Hunter offered plaintiff the position of mortgage-loan originator with the same formula for compensation, but limited to loan origination for the secondary market. Plaintiff declined to accept that position.

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 6, 1997, alleging sex discrimination and retaliation for opposing sexual harassment. A right-to-sue letter was issued by the EEOC on September 25, 1997, and plaintiff timely filed this action on December 18, 1997, with the assistance of counsel. In her initial complaint, plaintiff alleged only gender discrimination. Plaintiff's first attempt to amend her complaint to assert claims for sexual harass-

ment were denied by earlier order of this court,[1] and her second motion to amend, which is for all purposes no different from the first, will be denied herein.[2]

The only evidence plaintiff has presented in support of her complaint is her own uncorroborated allegation that a male employee was earning similar compensation, but she was terminated as a loan originator because bank management felt that a woman should not earn such high compensation. Taking such statement as true, plaintiff has presented no evidence that such male employee was similarly situated, but received different treatment; and, specifically, she has presented no evidence that the male employee failed to meet the expectations of the savings bank or those of the bank examiners in performing duties related to originating loans.

## III. Discussion

### A. Jurisdiction

This matter arises under Title VII of the Civil Rights Act of 1964, as amended—42, United States Code, Sections 2000e, *et seq.* Plaintiff claims that she was subjected to adverse employment action based upon her gender. She timely filed a charge of discrimination with the EEOC, a right-to-sue letter was issued, and this civil action was timely filed. This court has jurisdiction over plaintiff's claims. 28 U.S.C. § 1343; 42 U.S.C. § 2000e(5)(f)(3).

### B. Title VII

#### 1. Introduction

Defendant has moved for summary judgment, contending that plaintiff cannot present evidence of a *prima facie* case of gender discrimination. Plaintiff objects and argues that summary judgment is inappropriate, inasmuch as she avers that defendant impermissibly demoted her based upon gender and that she was subjected to different treatment than that of another employee, who was male.

A plaintiff may establish a case of gender discrimination through direct evidence of discrimination or through the cumulative effect of indirect evidence of the employer's motivation. *Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 240 (4th Cir.1982). Alternatively, a plaintiff may attempt to establish a *prima facie* case of gender discrimination through use of a "*McDonnell–Douglas* scheme." *Id.*

If a plaintiff can establish such a *prima facie* case, the burden shifts to the employer to show some legitimate, nondis-

1. This court finds that plaintiff's proposed amendment to the complaint cannot pass the threshold requirements of Rule 15(a), Federal Rules of Civil Procedure, inasmuch as such amendments would be futile, because no evidence has been proffered that even suggests that she was the victim of sexual harassment or retaliated against for opposing unlawful harassment. *Ward Electronics Service, Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir.1987). Plaintiff has taken some issue with her former attorney's failure to include such a claim in the complaint; however, review of the entire file reveals that counsel could not have made such a claim in good faith, and that any such claim would have been in clear violation of Rule 11, Federal Rules of Civil Procedure.

2. As to her second motion to amend complaint, which is nearly identical to the prior motion, plaintiff has attached thereto a new charge of discrimination she filed on December 21, 1999, with the EEOC. (Apparently, defendant placed plaintiff on administrative leave on December 20, 1999.) In that charge, plaintiff appears to reassert the substance of her 1997 charge, adding to it what appears to be an additional claim of "harassment" beginning in 1999 and a claim of retaliation, apparently based upon allegations she made in her first Motion to Amend. This court has no subject-matter jurisdiction over such additional claims, which are now at the administrative level. Her second motion, therefore, provides no basis for amendment under Rule 15, inasmuch as any such amendment would be futile.

criminatory reason for the employment action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Upon such a showing, the burden shifts back, and the employee has the burden of proof to show by a preponderance of the evidence that the legitimate reasons offered by the employer were not true reasons, but were pretext. *Id.* In the instant matter, plaintiff contends that she has established a *prima facie* case, that the reason given by the defendant—incompetence—is pretextual because she was competent and her superiors simply did not think a woman should be earning as much as she was earning

■ Reading all the pleadings in a light most favorable to plaintiff, it appears that she has no direct evidence of gender discrimination; the "mixed-motive" standard under *Fuller v. Phipps,* 67 F.3d 1137, 1141 (4th Cir.1995), would be inapplicable; and analysis of this claim as a "pretext" case under the burden-shifting scheme of *McDonnell–Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is appropriate.

### 2. Shifting Burdens

■■ To make out a *prima facie* case, plaintiff would have to show that (1) she is a member of a protected class, (2) she was performing her job satisfactorily at the time of her discharge or demotion; (3) she was subjected to an adverse employment action; and (4) she was either replaced by or treated differently than persons outside the protected class. If plaintiff presented evidence upon which a reasonable inference could arise in her favor on each element, then she would establish a *prima facie* case of gender discrimination. At such point, the burden would shift to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action it took. If defendant met

that burden, then the presumption of discrimination would "drop from the case," and plaintiff would be required ultimately to show that the reason given by defendant was pretextual and that the adverse action was the result of discriminatory intent. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

### 3. Establishing a *Prima Facie* Case

Plaintiff clearly has alleged and proved the first and third elements of a *prima facie* case. She is a member of a protected class and was, without doubt, subjected to an adverse employment action.

■ The second element requires that plaintiff demonstrate that she was performing her job satisfactorily at the time. Clearly, plaintiff has shown that she was originating a substantial number of loans that met with the approval of her then supervisor, Hayes Martin. The overwhelming and undisputed evidence of record indicates that loans she completed did not contain required materials, did not advise the savings bank of the relationship between the borrower and real-property developers, and failed to comply with applicable federal regulations. While the affidavits of her employers are not decisive on this element, inasmuch as they may be result oriented, they do show, when objectively viewed, that the presentation of loan packages which violate federal regulations and invoke the ire of regulatory agencies as to the financial worthiness of the thrift cannot amount to "satisfactory" performance. The court has conducted a review of the confidential report of the OTS concerning the deficiencies that led to plaintiff's termination. Without revealing sensitive information that was produced pursuant to a protective order, suffice it to say that plaintiff's mishandling of the loans clearly demonstrates that she was not satisfactorily performing her job

as a loan originator. No doubt, Hayes Martin, in approving such loans, shares the blame; however, plaintiff clearly departed from federal regulations of which any loan originator knew or should have known. Indeed, plaintiff, with the assistance of Hayes Martin, jeopardized the reputation, if not the stability, of defendant savings bank.[3] Plaintiff has presented no evidence upon which she can satisfy her burden as to the second element.

■ Even if this court were to assume that plaintiff was performing her contractual duties in a satisfactory manner at the time of her demotion (which the court does not find), plaintiff cannot show the requisite disparate treatment under the fourth element of a *prima facie* case. The record is undisputed that Mr. Taylor, after meeting with bank regulators, took immediate action to correct the problem, which was two pronged-a personnel action and substantive changes in the bank's practices concerning the origination and approval of in-house loans. While Mr. Taylor clearly demoted plaintiff based upon her work, he immediately suspended and very quickly obtained the *resignation* of the male supervisory employee (the bank president) who approved the mishandled loans. Taking the analysis even further, plaintiff was not replaced by a male, but by a female; further, she was later offered her old position, with a modification to avoid the problems which arose from her originating in-house loans.

If there existed different treatment, it clearly was that plaintiff received more favorable and lenient treatment than her male supervisor. Indeed, there is no evidence that gender played any role in the decision to demote plaintiff; instead, the only inference which can be garnered from the facts of record is that Hayes Martin received a harsher penalty because he was ultimately responsible for the result of plaintiff's work—approved loans. More favorable treatment is not actionable.

### 4. Conclusion

■ The court finds that plaintiff has failed to establish a *prima facie* case of gender discrimination and that judgment must be entered for the defendant. Although she has proceeded *pro se* in the latter part of this litigation, the court finds that plaintiff has ably presented her position. The case law, however, is antithetical to her contentions and provides that the burdens cannot be satisfied through conclusory allegations and speculation as to an employer's motivations.

■ Speculation and conjecture raise a mere possibility of discrimination rather than the reasonable probability which is necessary to support an inference of discrimination. *Lovelace v. Sherwin-Williams, supra*, at 241–42. Speculative assertions that a defendant's motivation was gender based is not enough to withstand summary judgment, *Goldberg v. B. Green and Co.*, 836 F.2d 845, 848 (4th Cir.1988); and conclusory statements (like those contained in the response) will not satisfy plaintiff's burden in responding to the Motion for Summary Judgment. *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211 (4th Cir.1987). Unsupported allegations "do not confer talismanic immunity from Rule 56." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). Drawing all reasonable inferences in plaintiff's favor, she cannot establish a *prima facie* case.

Finally, the court has reviewed plaintiff's January 18, 2000, affidavit, which is

---

**3.** Inasmuch as a great deal of the secrecy surrounding reports by the OTS is in place to prevent unnecessary public concern, the court finds it appropriate and in the spirit of the protective order to state herein that the setback to defendant's OTS classification resulting from the examination herein discussed has now been fully remedied.

beyond the pleadings allowed by the pre-trial order or the Local Rules. Inasmuch as plaintiff is proceeding *pro se*, the court has considered such pleading and cannot find that it adds in any manner to satisfying her responsive burden. For the reasons discussed above, defendant's Motion for Summary Judgment will be allowed and judgment entered in defendant's favor. A judgment reflecting such decision is entered simultaneously herewith.

Plaintiff's second motion to amend is denied for the reasons discussed herein. As a matter of housekeeping, all other motions and requests are hereby denied.

This Memorandum of Decision is entered in response to defendant's Motion for Summary Judgment (# 60) and plaintiff's second motion to amend (# ___).