Lester Eugene HARMON, Plaintiff,

v.

Richard BUCHANAN, Individually and in his official capacity as Sheriff of Avery County; and Ed Williams, Individually and in his official capacity as a Deputy of the Avery County Sheriff's Department, Defendants.

No. 1:00CV–28–C.

United States District Court,
W.D. North Carolina,
Asheville Division.

Sept. 21, 2001.

Robert M. Elliot, Elliot, Pishko, Gelbin & Morgan, Winston-Salem, NC, Daniel A. Kuehnert, Kuehnert & Ayres, Morganton, NC, Eric R. Balles, Morganton, NC, for Plaintiff.

Tyrus V. Dahl, Jr., James R. Morgan, Jr., Womble, Carlyle, Sandridge & Rice, Winston-Salem, NC, Elizabeth K. Mahan, McElwee & McElwee, N. Wilkesboro, NC, Douglas L. Hall, Hall & Hall Attorneys at Law, Newland, NC,Kimberly C. Stevens, Stevens & Withrow, PLLC, Winston-Salem, NC, for Defendant.

## ORDER

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the court upon defendants' Motion for Summary

Judgment. After careful consideration of the briefs of respective counsel, and having conducted a hearing at which oral arguments were presented, the court will deny the motion and direct the Clerk of this court to place this matter on the next available trial calendar.

### Findings and Conclusions

### I. Background

In this action, plaintiff contends that he was subjected to excessive force in violation of the fourth amendment of the United States Constitution, which is made actionable under 42, United States Code, Section 1983. Plaintiff has conceded in his response that Section 1983 is the appropriate provision to bring such a claim, making citation to other provisions surplusage. As a supplemental claim, plaintiff recasts his federal claim as a violation of parallel provisions of the Constitution of the State of North Carolina. In short, plaintiff claims that the force used by Deputy Sheriff Ed Williams in subduing plaintiff on a rural road in Avery County was excessive in that the deputy struck him on the head from behind with a blunt instrument while his arms were handcuffed behind him, causing him to fall to pavement, and then lifting him while he was unconscious, thereby dislocating his shoulder, and dragging him across the pavement, causing further injuries. Defendants have moved for summary judgment, contending that the force used was objectively reasonable and that any injury was incidental to subduing a highly intoxicated individual who was attempting to escape from custody. Counsel for the respective parties have fully briefed the issues.

### II. Summary Judgment Standard

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the nonmoving party has the burden of persuasion to establish that there is a genuine issue for trial.

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving [sic] party, there is no "genuine issue for trial."

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted; emphasis in the original) (quoting Fed.R.Civ.P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. *Id.* "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.,* at 248, 106 S.Ct. 2505. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

[T]he court is obliged to credit the factual asseverations contained in the material before it which favor the party resisting summary judgment and to draw inferences favorable to that party if the inferences are reasonable (however improbable they may seem).

*Cole v. Cole,* 633 F.2d 1083, 1092 (4th Cir.1980). Affidavits filed in support of

defendants' Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. *United States ex rel. Jones v. Rundle*, 453 F.2d 147 (3d Cir.1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir.1979).

### III. Undisputed Facts

The court has reviewed closely the versions of events as set forth by respective counsel in their briefs. There are stark differences in recollection as to what transpired. If the court were to fully credit the deputy's version of what happened, summary judgment for him would be appropriate. Plaintiff, however, has presented averments of a bystander which paint a very different picture of what transpired and would, if proved at trial, support a finding in plaintiff's favor on the issue of excessive force. For the limited purpose of summary judgment and under the standards discussed below, the court has fully credited the deputy's perceptions concerning what he perceived in making the decision to use force in apprehending plaintiff and fully credited the averments of the bystander concerning what the deputy actually did in apprehending plaintiff.

On December 4, 1999, plaintiff was 35 years old and worked as a carpenter. On that day, he was highly intoxicated and was walking around his rural neighborhood discharging a shotgun and arguing with his neighbors. The Avery County Sheriff's Department was called, and the responding deputy asked plaintiff and his neighbors to simply go home and avoid altercations.

Shortly after the initial visit by the sheriff's department, plaintiff was again walking around the community, but was unarmed. Defendant Williams responded to the second call, and unkind words were exchanged between Defendant Williams and plaintiff, which resulted in plaintiff being knocked to the ground, a knee forcefully placed in his back, and his hands being cuffed behind his back. Defendant Williams then raised plaintiff to his feet, escorted him to the back of the patrol car, and instructed him to stay. Without first securing plaintiff in the backseat of the patrol car, Defendant Williams left plaintiff to talk with the neighbors. Plaintiff proceeded to stagger down the road with his hands still cuffed behind his back.

At that point, the versions of events materially diverge. Defendant Williams avers that he perceived plaintiff attempting to escape custody by running down a rural road at dusk with his hands cuffed behind him. Defendant Williams's version of what happened next is that when he caught up with plaintiff, plaintiff fell to the ground, having lost his balance in a failed attempt to kick Williams. Deputy Williams further testified that he and another deputy then lifted plaintiff from the ground and plaintiff started walking back to the patrol car, but fell along the way due to his state of intoxication. Bud Erwin, a neighbor of plaintiff, testified that he saw the following transpire:

> The deputy turned around and took off down the road flying, right behind Gene [the plaintiff]. The deputy was running. The minute he got up behind Gene, he whopped him upside the head with something. When he hit him, Gene immediately fell flat on his face. You could hear it smack when the officer hit him in the head, and you could hear Gene's face hit the road, too.

Affidavit of Bud Erwin, at ¶¶ 14 –16. Bud Erwin was not sure what Deputy Williams used to hit plaintiff, but he stated that "the officer had something in his fist," such as

"one of those big flashlights a lot of officers carry . . . ." *Id.*

In addition to evidence of what transpired, plaintiff has also presented evidence concerning his injuries, which he contends included head trauma and lingering headaches, an ACL separation, and various abrasions which could be considered "road rash." Defendants have presented evidence that injuries were not as severe as plaintiff contends, and their evidence includes a supposedly *ex post facto* addendum to plaintiff's medical record by the emergency room physician indicating a lack of head trauma.

There is also a great deal of information presented by plaintiff concerning the criminal wrongdoing of Defendant Buchanan and the purported oral policy of the former sheriff authorizing the use of gratuitous force against intoxicated suspects or anyone making the jobs of the sheriff or his deputies difficult.

## IV. Excessive–Force Claim

 Under the fourth amendment, objective reasonableness provides the standard for use of force in effectuating an arrest. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Martin v. Gentile*, 849 F.2d 863 (4th Cir.1988). The test for excessive force requires "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner, supra,* at 8, 105 S.Ct. 1694. The standard for measuring the reasonableness of an arrest is wholly objective; subjective bad intentions do not make a constitutional violation out of an otherwise reasonable seizure. *Martin v. Gentile*, 849 F.2d 863 (4th Cir.1988). The "objective reasonableness test" re-

quires careful attention to the circumstances of the particular case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor, supra,* at 396, 109 S.Ct. 1865. The focus is on reasonableness at the moment, recognizing that officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. *Id.* The analysis concerns the threat the officer perceives at the time, not what a criminal jury may find later to be proved or not proved beyond a reasonable doubt. *See Greenidge v. Ruffin*, 927 F.2d 789 (4th Cir.1991).

This court has considered the circumstances of plaintiff's criminal conduct, including the severity of the crime, whether he posed an immediate threat to the safety of the officer or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. In relation to the December 4, 1999, incident, plaintiff was convicted on July 11, 2001, of disorderly conduct and being intoxicated and disruptive, both misdemeanors. In exchange for his plea, the State of North Carolina dismissed charges of obstructing and assaulting a government officer. Plaintiff was sentenced to a term of 30 days' imprisonment, which was suspended upon payment of a $25 fine, $192 in costs, and completion of 12 months unsupervised probation. The court finds that plaintiff has presented evidence of criminal conduct on his part which only rose to the level of a misdemeanor. Next, the court has considered whether defendant posed an immediate threat to himself or to others. The only threat plaintiff posed the second time he was taken down was to himself—certainly walking down any road handcuffed

and intoxicated poses a real danger. The court has also considered where these events were taking place and, unlike the companion *Jones* case, which involved the booking area of a county jail facility, there was no heightened interest in maintaining order on a rural road. Finally, the court has considered that plaintiff was actively attempting to escape custody by running away from the officer, albeit in handcuffs, and that the officer perceived that the plaintiff was attempting to assault him by kicking, although the officer testified that the one attempt resulted in the plaintiff falling to the ground.

■ The *Garner* and *Martin* decisions require this court to focus on the perceptions of the officer at the time force was applied. Without doubt, Defendant Williams perceived that plaintiff was noncompliant, belligerent, highly intoxicated, and actively attempting to escape custody. There is not any evidence that after plaintiff was handcuffed he was a real threat to anyone other than himself. Inasmuch as whether the means used by an officer to effectuate an arrest was objectively reasonable is not left to the deferential standard of what the officer "perceived," the court has also considered evidence that seriously puts into question whether the officer employed a blunt instrument to bring plaintiff down from behind. The court has considered the averments of the bystander that indicate a blunt instrument was used, the contemporaneously made hospital notes and instructions for head trauma care, and the photographs showing head trauma that were made by a newspaper editor within days of the event. While defendants certainly have presented evidence upon which a jury could also find for them, a genuine issue of fact exists as to the amount of force employed. Having fully considered all the evidence presented, the court finds that plaintiff has presented evidence which, if later presented to a jury, could result in a finding that excessive force was employed by Defendant Williams. Striking an unarmed, fleeing, handcuffed suspect in the head, from behind, with a blunt instrument (which, taking all evidence in a light most favorable to plaintiff, probably was a MAG flashlight), in relation to a misdemeanor matter, in an area where there was no heightened interest in maintaining order, and then dragging that individual, unconscious, across asphalt pavement, could well be considered to be a fourth-amendment violation. It is clear that a reasonably objective officer faced with such circumstances would not have applied the amount of force purportedly applied in the case.

■■ This court's analysis is consistent with well-settled law. The standard of "objective reasonableness" flows from the analysis the Supreme Court applied in *Tennessee v. Garner, supra,* wherein it held that use of deadly force by police to prevent the escape of an apparently unarmed suspected felon violated the fourth amendment. In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court refined the standard for examining an excessive-force claim and held that Section 1983 claims against law enforcement officers for excessive force in the course of an arrest must be analyzed under the objective reasonableness standard of the fourth amendment, as follows:

Because "the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, ..." its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is

actively resisting arrest or attempting to evade arrest by flight .... The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the $^{20}\!/_{20}$ vision of hindsight .... The calculus of reasonableness must embody allowance of the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.*, at 396–97, 109 S.Ct. 1865. Force is not excessive if it is objectively reasonable under the circumstances facing the officer, without regard to his underlying intent. *Id.*

In a case originating in this district, *White v. Leonhardt,* 46 F.3d 1130 (table case), 1995 WL 26696 (4th Cir.1995), the Court of Appeals held that, regardless of plaintiff's version of events, a qualified-immunity inquiry (which is identical to the substantive analysis at summary judgment or trial) may be made on a claim of excessive force as early as the initial pleading stage. It need not wait for resolution of issues of fact, because the standard is based upon the officer's perception, not the plaintiff's, and how a reasonable officer would respond in such circumstances.

Officer Leonhardt is entitled to immunity from liability for his use of force if a reasonable officer could have believed that White posed a threat of harm to others when Leonhardt fired. Plaintiff argues that there are various issues of disputed fact in this case that foreclose summary judgment on qualified immunity grounds.

\* \* \* \* \* \*

Plaintiff's contentions misconceive the law of qualified immunity. The immunity inquiry depends on the reasonable-ness of the officer's perceptions, not the plaintiff's.

*Id.*, 1995 WL 26696, at \*2 (citation omitted). Indeed, other courts have found that throwing a person to the ground to subdue him, even if it results in paralysis, is not unreasonable where officers reasonably perceive a threat to their own safety or to the safety of others. *See Dyer v. Sheldon,* 829 F.Supp. 1134 (D.Neb.1993), *aff'd* 21 F.3d 432 (8th Cir.), *cert. denied,* 513 U.S. 970, 115 S.Ct. 440, 130 L.Ed.2d 351 (1994). Indeed, this court has held that the use of minimal force, resulting in superficial injury, to subdue a person who is intoxicated and physically resisting is objectively reasonable. *Hoover v. McDowell County,* 4:95cv182–C (W.D.N.C.1996), *aff'd* No. 96–2566, 1998 WL 398825 (4th Cir.1998). In this case, however, the court can find no evidence that plaintiff posed any threat to the deputy or any member of the public when the force testified to by bystanders was employed.

■ It is well-established that law enforcement officers are entitled to use the amount of force necessary to take an individual into custody. *Graham v. Connor, supra.* Among the relevant factors in determining whether the officers applied reasonable force is the conduct of the arrestee. *Id.,* at 396, 109 S.Ct. 1865. The Constitution merely requires that the force used to subdue the suspect be reasonable. As the *Graham* Court reiterated, " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Id.* (citation omitted). The deputy's actions must be viewed from the objective perspective of a reasonable officer on the scene "rather than with the 20/20 vision of hindsight." *Id.*

■ Another relevant factor in determining whether the application of force was reasonable is the extent of the plain-

tiff's injuries. *See Pressly v. Gregory*, 831 F.2d 514, 518 (4th Cir.1987). As the medical records on the night of the incident in controversy indicate, plaintiff suffered injuries inconsistent with the application of minimal force; rather, plaintiff has presented evidence of head trauma that is consistent with being struck from behind with a blunt instrument, like a flashlight. Indeed, the graphic depiction of long striated abrasions—what the court calls road rash—is consistent with a person being dragged across rough asphalt.

Finally, the Supreme Court said in *Graham v. Connor, supra,* that a court should also consider the severity of the crime in determining the reasonableness of the force. In the case at bar, plaintiff was convicted of disorderly conduct and intoxicated and disruptive—misdemeanor offenses. Following the analysis of excessive force, as guided by the Supreme Court opinions in *Tennessee v. Garner, supra,* and *Graham v. Connor, supra,* it appears that the issue of what force was used and its reasonableness requires resolution at trial.

## V. Other Claims and Defendants

### A. Official–Capacity Claims

While not argued, it appears that plaintiff has attempted to sue the Sheriff of Avery County and his deputies in their official capacities under Section 1983. The court notes a growing dichotomy between federal and state jurisprudence in North Carolina concerning the role of a sheriff—the state courts find, with little explanation, that a sheriff and his deputies are state officials who enjoy the state's eleventh-amendment immunity in Section 1983 actions;[1] however, federal courts, with much explanation, find that they are local officials, who enjoy no immunity.[2] The parties have indicated to the court that they do not wish to enter the fray on such issue.[3] The undersigned is on the record in a number of cases as finding that a North Carolina sheriff is, by mandate of the North Carolina Constitution, which has its origin in English common law, a representative of the state who is now elected locally. The dichotomy that is growing between the federal and state courts in North Carolina could lead to a lessening in the confidence of the judiciary for one reason—federal and state courts have concurrent jurisdiction over Section 1983 actions, and, as it now stands, a plaintiff cannot bring an action in state court against a sheriff under Section 1983, but can walk across the street and do so in the federal forum. Such issue needs resolution by either the highest state court or by legislative action. This court, therefore, does not reach such issue.

### B. Additional and Supplemental Claims

The remainder of plaintiff's claims pivot on the substantive viability of his Section

---

1. *Buchanan v. Hight*, 133 N.C.App. 299, 515 S.E.2d 225 (1999), *review denied*, 351 N.C. 351, 539 S.E.2d 280 (1999); *Messick v. Catawba County*, 110 N.C.App. 707, 431 S.E.2d 489, disc. *review denied*, 334 N.C. 621, 435 S.E.2d 336 (1993); *Slade v. Vernon*, 110 N.C.App. 422, 429 S.E.2d 744 (1993).

2. *Harter v. Vernon*, 101 F.3d 334 (4th Cir. 1996); *Knight v. Vernon*, 214 F.3d 544, 552 (4th Cir.2000); *Olvera v. Edmundson*, 1:01cv74 (W.D.N.C.2001); *Carter v. Barker*, 225 F.3d 653 (table), 2000 WL 1008794 (4th Cir.2000); *Ramsey v. Schauble*, 141 F.Supp.2d 584 (W.D.N.C.2001).

3. The court notes that Sheriff Buchanan was not removed from office by action of the county commissioners, but by a state superior court judge, under Chapter 128–16 of the North Carolina General Statutes, in an action brought in the name of the State of North Carolina. N.C. Gen.Stat. § 128–17. *See State v. Felts*, 79 N.C.App. 205, 339 S.E.2d 99 (1986).

1983 claim, which, in turn, centers on whether Defendant Williams's conduct was objectively reasonable. As discussed above, plaintiff's Section 1983 claims remain viable.

There is, however, no evidence of a civil conspiracy to violate plaintiff's rights, and to the extent that plaintiff has not already conceded the Section 1985 claim (*see* plaintiff's Brief at footnote 2, page 1), if any, it will be dismissed.

■ As to the claim for supervisory liability, the court agrees with plaintiff that it is a most rare case where a plaintiff can plead and present evidence of an unconstitutional policy formulated by a sheriff. Plaintiff has presented evidence of public statements advocating the infliction of gratuitous injury on detainees and arrestees[4] and evidence that Defendant Buchanan made similar statements to his deputies authorizing the use of what can best be described as excessive force. *See* Deposition of Deputy Puckett; Deposition of Deputy Hughes; Deposition of Deputy Keller.

■ The doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability attaches if the conduct directly causing deprivation is undertaken to effectuate an official policy or custom for which the supervisory official is responsible. *Fisher v. Washington Metro. Area Transit Auth.*, 690 F.2d 1133, 1142–43 (4th Cir.1982). A supervisory official may be liable for acts of subordinates if the official is aware of pervasive, unreasonable risk of harm from a specified source and fails to take correc-

tive action as a result of deliberate indifference or tacit authorization. *Slakan v. Porter*, 737 F.2d 368 (4th Cir.1984), *cert. denied*, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). It is clear that a sheriff is responsible for the activities of a deputy if he is aware of a pervasive, unreasonable risk of harm and fails to take corrective action. *Scott v. Vandiver*, 476 F.2d 238 (4th Cir.1973). In this case, plaintiff has presented evidence that not only was Defendant Buchanan aware of the potential for constitutional violations such as the one alleged herein, he instigated the violations by creating outrageous policies advocating—if not requiring—the use of excessive force by his deputies.[5] Plaintiff's supervisory liability claim, therefore, will not be dismissed at this juncture.

■ Plaintiff's supplemental state constitutional claims are not viable. Plaintiff cannot avail himself of state constitutional protections where the common law has afforded him adequate remedies. *See Davis v. Town of Southern Pines*, 116 N.C.App. 663, 449 S.E.2d 240 (1994). Under North Carolina law, a state constitutional claim for excessive force is supplanted by a common-law claim for assault and battery. The court, therefore, will dismiss plaintiff's state constitutional claims.

### C. Other Pending Motions

As a matter of housekeeping, plaintiff's Motion to Compel will be denied, defendants' Motion to Compel will be will be allowed, defendants' Motion to Allow Williams' Affidavit to be Deemed Filed Nunc Pro Tunc will be allowed, and plaintiff's Motion to Supplement the Record will be allowed. An Order resolving the cross motions to bifurcate and consolidate and

---

4. Defendant Buchanan has been removed from office by the State of North Carolina and has been convicted in this court of federal felony offenses.

5. The court notes that not every deputy followed such patently unlawful policy. *See Jones v. Buchanan.*

plaintiff's Motion for Extension of Time to Respond to Defendant Ed Williams' Motion to Bifurcate is entered simultaneously herewith.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendants' Motion for Summary Judgment (# 30) is **GRANTED** as to plaintiff's conspiracy claims and state constitutional claims, but otherwise **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's Motion to Compel (# 32) is **DENIED,** defendants' Motion to Compel (# 27) is **DENIED,** defendants' Motion to Allow Williams' Affidavit to be Deemed Filed Nunc Pro Tunc (# 36) is **AL-** **LOWED,** and plaintiff's Motion to Supplement the Record (# 49) is **ALLOWED.**

Respective counsel are instructed to discuss possible trial dates and contact the Clerk of this court within 15 days to schedule trial of this matter. The parties are further encouraged to discuss amicable resolution of this matter well in advance of trial so as to better utilize the limited public resources available for trials.