Russell **KELSO**, Plaintiff,

v.

**CORNING CABLE SYSTEMS INTERNATIONAL CORP.,**
Defendant.

No. 1:01CV138–C.

United States District Court,
W.D. North Carolina,
Asheville Division.

Sept. 26, 2002.

John C. Hunter, Asheville, NC, Phyllis A. Palmieri, Morganton, NC, for Plaintiff.

C. Daniel Barrett, Harley H. Jones, Edwards, Ballard, Clark & Barrett, P.A., Winston–Salem, NC, Jonathan W. Yarbrough, Edwards, Ballard, Bishop, Sturm, Clark & Keim, Asheville, NC, for Defendant.

## MEMORANDUM OF DECISION

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the court in accordance with 28, United States Code, Section 636(c), and upon the defendant's Motion for Summary Judgment. Having considered defendant's motion and supporting brief, plaintiff's response, and defendant's reply, the court enters the following findings, conclusions, and decision.

## FINDINGS AND CONCLUSIONS

### I. Background

This action concerns the termination of plaintiff's employment with defendant and whether such termination was violative of the Family and Medical Leave Act ("FMLA").

In his complaint, plaintiff alleged the following causes of action: (1) violation of the Family and Medical Leave Act (FMLA); (2) a common-law tort claim for negligent infliction of emotional distress; and (3) a Section 510 violation of the Employee Retirement Income Security Act (ERISA). Defendant moved for summary judgment on all claims and made a *prima facie* showing under Rule 56, Federal Rules of Civil Procedure, that it was entitled to the relief it sought. In his response, plaintiff has only made a proffer and presented arguments as to his FMLA

claim, thereby abandoning[1] his other causes of action. As to those abandoned claims, the court will summarily enter judgment in favor of defendant. For the reasons discussed below, the court concludes that no genuine issues of material fact remain on the FMLA claim and that defendant is entitled to the judgment it seeks, inasmuch as plaintiff received all the leave required under the FMLA as a matter of law.

## II. Undisputed Facts

Plaintiff was hired by defendant on September 8, 1998, to perform work in quality control. He worked third shift throughout his employment. Plaintiff was provided an employee handbook, which contained the company policy concerning family and medical leave. As to that policy, the handbook stated, in pertinent part, as follows:

> Any remaining paid vacation must be substituted for unpaid family/medical leave. The substitution of paid leave for unpaid leave does not extend the 12 week leave period.

In addition, plaintiff went through an orientation class that included a slide show that explained family and medical leave. Although plaintiff does not recall what the slides covered, any dispute as to their content is immaterial, inasmuch as they contained material redundant to that included in the handbook.

It is undisputed that in determining how much FMLA leave an employee is entitled to take, defendant has a policy and a practice of looking to the time taken in the 12 months immediately preceding the request for leave, as opposed to that taken in a calendar year or an employment-anniversary year.

Plaintiff took his first FMLA leave beginning October 25, 1999, for surgery stemming from a motorcycle wreck, prior to his employment, in which he suffered a shoulder injury. Plaintiff signed "Form B," which notified him that he was eligible for 504 hours of FMLA leave beginning on October 25, 1999, and he was granted the leave requested. Plaintiff took 192 hours.

In March of 2000, plaintiff notified defendant that he needed to take leave under the FMLA to take care of his wife, who was undergoing back surgery on March 17, 2000. Plaintiff specifically testified that he understood that such leave was going to be FMLA-covered. The FMLA medical certification form provided by the doctor for plaintiff's wife indicated that she would need six to eight weeks to recuperate from her surgery, which approximated the 312 hours of FMLA leave plaintiff had remaining.

In response to the request, a plant nurse sent plaintiff a letter dated March 20, 2000, confirming his FMLA leave and stating in error that his FMLA leave would begin after the expiration of his vacation time, of which he had 136 hours. The company policy would have the 136 hours of vacation time run concurrently with the first 136 hours of available FMLA leave.

On April 17, 2000, the plant nurse talked with plaintiff by phone and informed him that his FMLA leave would expire in about two weeks, but plaintiff claims that she told him that it had expired three weeks previously. Plaintiff met with his supervisor, Jeff Queen, to discuss his return to work, and plaintiff agreed to report to work at 10 p.m. on Sunday night, April 30, on a modified schedule to accommodate his needs. Just before he was scheduled to report to work on the night of April 30, plaintiff called in and stated that he could not come to work. He called in one or two

---

**1.** It appears to the court that plaintiff, quite properly, has abandoned pursuit of such claims, inasmuch as the facts developed during discovery would not support their further prosecution. At this point, plaintiff's only arguable claim is under the FMLA.

nights later and again stated that he would not report to work. Plaintiff did not report to work for his shifts on the nights of Sunday, Monday, and Tuesday.

After plaintiff failed to report for three consecutive shifts, his supervisor placed him on suspension pending further review of his disciplinary record. Subsequent to his review of plaintiff's prior disciplinary record for attendance and tardiness issues,[2] plaintiff's supervisor decided that termination was the appropriate response to plaintiff's failing for three days to report to work as agreed. Plaintiff admits that there were no attempts to terminate him until he failed to show up for the shifts he had agreed to work, and there has been no evidence presented that such termination was in retaliation for taking FMLA leave.

The undisputed evidence elicited during discovery indicates that even if plaintiff had been given the benefit of the error made by the plant nurse (approximately three more weeks of leave, in addition to the 12 weeks of leave he had already received under the FMLA), he would not have been able to successfully return to his employment. It is undisputed for the purposes of this record that plaintiff's wife was unable to return to her work or tend to her own needs or those of their children and that such tasks fell to plaintiff. Plaintiff testified that he had not been able since May of 2000 to work any regularly scheduled job, full or part-time, due to his wife's medical condition:

Q: Let's talk about the two-month period immediately after you left Corning Cable. May of 2000, June of 2000. How many hours a week could you have worked during that period.

A: None

Q: None at all?

A: Very, very little. When I wasn't taking care of my wife, I was taking care of my kids.

Q: Okay. How about, let's say the two months after that July of 2000 and August of 2000. How much could you have worked during that time period?

A: The same amount, very little.

&ast; &ast; &ast; &ast; &ast; &ast;

Q: Were you able at any time since May of 2000 to work full-time?

A: No, no. I was not able. I tried my best to find a part-time job and jobs that I could do to where I could still tend to my family.

&ast; &ast; &ast; &ast; &ast; &ast;

Q: Has there been any time since your wife's surgery that you could work from 7:00 p.m. to 7:00 a.m. or from 6:00 p.m. to 6:00 a.m., whichever your shift was?

A: No.

Plaintiff further testified that taking care of his wife and two children was a 24–hour–a–day job for him and that he did not know from one day to the next how much care he would be required to provide his wife. He described the "not knowing" what the next day would hold with regard to his wife's medical condition as the "big psychological struggle" he faced. Since his termination, plaintiff's mother-in-law has ensured that all of the family's bills

**2.** Plaintiff's attendance record, before taking FMLA leave, reflected the following: 2/26/99 verbal warning for missing 66 hours of work; 5/28/99 written warning for accumulating 5 tardies during the time from 3/30/99 to 5/20/99; 8/9/99 placed on probation for poor attendance; late 4 times; left early 2 times; absent 3 times since last warning; 10/20/99 placed on two days' suspension; excessively late twice; absent once; placed on 90 days' probation.

were paid in exchange for plaintiff's performing chores for her company.

## III.   Summary Judgment Standard

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the nonmoving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving [sic] party, there is no "genuine issue for trial."

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted; emphasis in the original) (quoting Fed.R.Civ.P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). ▮ By reviewing substantive law, the court may determine what matters constitute material facts. *Id.* "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

> [T]he court is obliged to credit the factual asseverations contained in the material before it which favor the party resisting summary judgment and to draw inferences favorable to that party if the inferences are reasonable (however improbable they may seem).

*Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir.1980). Affidavits filed in support of defendant's Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. *United States ex rel. Jones v. Rundle*, 453 F.2d 147 (3d Cir.1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir.1979).

## IV.   Discussion

Plaintiff brings his cause of action under 29, United States Code, Section 2615(a)(1), which provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12 month period ..." *Id.* It is undisputed that plaintiff received 12 weeks of leave between October 25, 1999, and May 1, 2000. Further, plaintiff does not appear to contend that he was terminated for exercising his FMLA rights.

Thus, the only cognizable violation of FMLA concerns the notice provided to plaintiff regarding the March 2000 FMLA leave. In substance, plaintiff's claim is predicated upon the plant nurse's act of misinforming him as to the amount of leave he could take, and plaintiff further appears to argue in his response that defendant failed to inform him and its other employees, generally, of the method of calculating FMLA leave.

▮ An overestimate of leave by an officer or agent of an employer covered by the FMLA does not provide the basis for a cause of action under the FMLA. Plaintiff appears to rely upon 29, Code of Federal Regulation, Part 825.700(a), which provides, as follows:

[I]f an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement.

This administrative regulation has been specifically abrogated by the United States Supreme Court as exceeding the bounds of agency rulemaking. In *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 122 S.Ct. 1155, 1165, 152 L.Ed.2d 167 (2002), the Court held, as follows:

> [Part 825.700(a) is] invalid because it effects an impermissible alteration of the statutory framework and cannot be within the Secretary's power to issue regulations necessary to carry out the Act.

The Supreme Court further held that Part 825.700(a) was invalid rulemaking by the Secretary of Labor because it altered, albeit favorably, the employee's entitlement to a total of 12 workweeks of leave during any 12-month period of employment. *Id.,* —— U.S. at ——–——, 122 S.Ct. at 1163–64.[3] Even if Part 825.700(a) had any continued validity, which it apparently does not, plaintiff would not be able to avail himself of such protections, inasmuch as he knew, or should have known through defendant's publication of a handbook and slide presentation, that *he* was required to use his vacation leave concurrently with his FMLA leave. To allow a claim to proceed otherwise would allow individual employees to receive a windfall, and possibly a cause of action, where the employer complied with the Act in all regards. All that the FMLA requires is a maximum of 12 weeks' FMLA leave and the posting of a notice of such statutory right. This defendant has fully and completely complied with the FMLA.

█ Finally, plaintiff argues that defendant was under an obligation to provide notice of the method used to calculate FMLA leave. The court can find no such statutory requirement. The only regulation that addresses that issue is part 825.200(d)(1), which provides that notice be given if the employer changes calculation periods. Plaintiff fails to present evidence that defendant has interfered with, restrained, or denied him the exercise of his rights under 29, United States Code, Section 2615(a)(1).

█ Even if plaintiff had established a *prima facie* case under the Act, which he has not, an employer is liable under *Ragsdale* only for compensation and benefits lost by "reason of the violation." 29 U.S.C. § 2617(a)(1)(A)(i)(I). The Court emphasized that Section 2617 of the FMLA "provides no relief unless the employee has been prejudiced by the violation." *Id.,* —— U.S. at ——, 122 S.Ct. at 1161. Even if plaintiff could have shown that he was entitled to 15 weeks' of leave based on the plant nurse's error rather than the statutory 12 weeks that he received, plaintiff suffered no loss, inasmuch as the leave was uncompensated and plaintiff testified he was unable to engage in gainful employment due to family care obligations. Any error regarding the designation of FMLA leave could not have prejudiced plaintiff's FMLA right to return to work, because he was, by his own admission, unable to return to work. *Id.* at 1162. *See Cehrs v. Northeast Ohio Alzheimer's Research Center,* 155 F.3d 775, 784–85 (6th Cir.1998) (dispute as to termination date is irrelevant since it was undisputed that plaintiff was unable to return to work within a period provided by the FMLA).

---

**3.** While not specifically mentioning such case, it would appear to this court, respectfully, that the Supreme Court's decision in *Ragsdale* overrules the decision of the Court of Appeals for the Fourth Circuit in *Cline v. Wal–Mart Stores,* 144 F.3d 294 (4th Cir.1998).

### V. Conclusion

The court has considered the arguments presented by respective counsel and determined that no genuine issues of material fact remain for trial and that defendant is entitled to the relief it seeks as a matter of current case law. A judgment reflecting this decision is entered simultaneously herewith.