**Yvette KATEKOVICH, Appellant**

v.

**TEAM RENT A CAR OF PITTS- BURGH, INC., dba Budget Rent a Car; Ashok Khambhla; Michael Mc- Donough; Sanford Miller**

No. 00–2389.

United States Court of Appeals, Third Circuit.

Argued Sept. 5, 2001.

Filed April 19, 2002.

John R. Linkosky, Esq. (Argued), John Linkosky & Associates, Carnegie, PA, for Appellant.

Richard J. Antonelli, Esq. (Argued), Robert W. Cameron, Esq., Theodore A. Schroeder, Esq., Littler Mendelson, Pittsburgh, PA, for Appellees.

Before SCIRICA, ALITO, and BARRY, Circuit Judges.

## OPINION OF THE COURT

BARRY, Circuit Judge.

Yvette Katekovich appeals the District Court's grant of summary judgment to defendants on all counts of her complaint alleging violations of the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), Title VII, and the Pennsylvania Human Relations Act (PHRA). The District Court had jurisdiction pursuant to 28 U.S.C. 1331, and appellate jurisdiction is proper in this Court under 28 U.S.C. 1291. We will affirm.

### I.

Katekovich was an employee of Team Rent–a–Car of Pittsburgh, Inc. (hereinafter, "Team"), or one of its predecessors, from 1990 until February 15, 1995. At some point in 1992, Katekovich was diagnosed with two different sleep disorders. These disorders prevented her from getting any restful sleep at night and caused her to be unusually sleepy during the day. Upon receiving this diagnosis, Katekovich informed her supervisors of her condition. In 1993, Katekovich was also diagnosed as suffering from depression. Although her supervisors denied her requests to be permitted to work from home, they did agree that she would no longer have to drive cars, and she was also given time off for a weekly visit to her psychiatrist.

Katekovich's condition allegedly worsened between 1992 and 1994. On January 16, 1995, her psychiatrist recommended that she be hospitalized. She informed her supervisors that she was going to the hospital for personal reasons, although they were not made aware of the exact nature of her hospitalization. On January 24, 1995, she was hospitalized in the psychiatric ward of Allegheny General Hospital. While she was hospitalized, Katekovich spoke with one of her supervisors several times on the telephone. Katekovich and one of her physicians informed a supervisor that she was being hospitalized for testing related to her sleep disorders.

Katekovich was released from the hospital on February 8, 1995. On February 10, 1995, someone in the Allegheny General psychiatry department indicated on an evaluation form that Katekovich could return to work. On February 15, 1995, Katekovich telephoned a supervisor to inform him that she would report to work that day. The supervisor told her that she was being terminated.

On February 2, 1997, Katekovich filed a complaint in the District Court, naming as defendants Team and several individuals who were her supervisors. As noted earlier, the complaint alleged that the defendants had violated the ADA, PHRA, FMLA, and Title VII. Following discovery, the defendants filed a motion for summary judgment, and the motion was referred to Magistrate Judge Kenneth J. Benson. On June 8, 2000, the Magistrate Judge recommended that the motion be granted as to all defendants and all counts. On July 13, 2000, the District Court accepted this recommendation.

On appeal, Katekovich challenges the entry of summary judgment for Team on her ADA and PHRA claims, and the entry

of summary judgment for all defendants on her FMLA claim. Katekovich does not appeal from the grant of summary judgment to the individual defendants on her ADA claim. She also does not challenge the Court's decision to grant summary judgment to all defendants on her Title VII claim.

## II.

Katekovich's appeal is unavailing. First, the District Court was correct that Katekovich did not present sufficient evidence to support a finding that she was disabled and that she thus failed to make out a prima facie ADA claim.

■ In order to prove that she had a disability, Katekovich had to demonstrate that she had or was perceived to have a "physical or mental impairment that substantially limits one or more of [her] major life activities ..." 42 U.S.C. 12102(2)(A). See also *Olson v. Gen. Elec. Aerospace*, 101 F.3d 947, 952 (3d Cir.1996). The Magistrate Judge thoroughly reviewed the evidence from Katekovich's physicians as to her ability to perform such "major life activities," all of which indicated that she had no such substantial limitations. Further, Katekovich's own testimony did not demonstrate that she was substantially impaired. Katekovich did claim that, because of her sleep disorder, she had difficulty in staying awake during the day. By itself, however, this cannot be considered a major life activity. Rather, the difficulty or inability to stay awake during the day can only amount to a disability if it causes an impairment of some other life activity, and she testified that she can perform her normal duties. Because there was insufficient evidence that would demonstrate that Katekovich was substantially limited in any way, much less in any major life activity, her difficulty in staying awake cannot be a disability.

It, therefore, is of little moment whether or not defendants knew (or should have known) of Katekovich's depression and sleep disorder. It also is of little moment, if they did know, whether her conditions could, should, or would have been reasonably accommodated. Because the Magistrate Judge and the District Court correctly held that Katekovich had not presented sufficient evidence to prove that she was disabled, the grant of summary judgment to Team on the ADA claim will be affirmed. Because this finding is dispositive of the ADA claim, we need not consider the alternative grounds on which the Magistrate Judge relied, i.e. that Katekovich did not show that she was a "qualified" individual or that her termination was "because of" her alleged disability. Further, because the PHRA is concededly coextensive with the ADA, the grant of summary judgment on that claim will also be affirmed.

Second, Katekovich argues that the defendants violated the Family and Medical Leave Act when they terminated her. In brief, the FMLA provides that employees of certain employers must be given up to twelve weeks of unpaid leave per year because of a serious medical condition rendering an employee unable to work. An employer may not terminate an employee because he or she has taken the leave permitted by the statute. If the employee is not able to return to work after twelve weeks, however, the employer may terminate the employee. Further, if an employer terminates an employee during the twelve weeks but the employee would not have been able to return to work at the end of the twelve weeks in any event, the employer has not violated the FMLA. See *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 784–85 (6th Cir.1998) (finding no cause of action where the employee "was clearly unable to return

to work within the period provided by the FMLA"). Katekovich was terminated approximately three weeks after the beginning of her hospitalization. Defendants contend that she could not have returned to work within the twelve-week FMLA leave period.

Katekovich's success on her FMLA depends, in the first instance, on the validity of regulations, promulgated by the Department of Labor (DOL), placing the burden on an employer to designate an employee's leave as FMLA-qualifying or not, and to notify the employee as to that designation. 29 C.F.R. 825.208(a) ("[i]n all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee as provided in this section"); 29 C.F.R. 825.700(a) ("If an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement."). It is undisputed that Team never informed Katekovich that her leave was being designated as FMLA leave. If this regulation is valid, then, the twelve weeks never started to run and it is irrelevant whether Katekovich could have returned to work within twelve weeks of the beginning of her hospitalization.

The United States Supreme Court has recently decided the precise issue before us, and we are bound by that decision. *Ragsdale v. Wolverine World Wide, Inc.*, U.S., —— U.S. ——, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002). The Court held that 825.700(a) was beyond the DOL's authority and contrary to the FMLA and, thus, that Tracy Ragsdale was not entitled to an additional twelve weeks' leave, even though her employer had not specifically notified her whether the thirty weeks she had taken were FMLA-qualifying. *Id.* at 1159. Ragsdale could not be more clear,

and we, therefore, conclude that Katekovich was not entitled to more leave than she received. We also conclude that the Magistrate Judge correctly determined that Katekovich did not present sufficient evidence to support a finding that she could have returned to work within twelve weeks. Accordingly, the grant of summary judgment on the FMLA claim will also be affirmed.

### III.

The July 13, 2000 order of the District Court will be affirmed.