Yolanda **MILLER,** Plaintiff,

v.

**PERSONAL–TOUCH OF VIRGINIA, INC.,** Defendant.

No. CIV.A. 2:04CV110.

United States District Court, E.D. Virginia, Norfolk Division.

Nov. 2, 2004.

John M. Loeschen, Norfolk, VA, for Plaintiff.

Thomas M. Lucas, Troutman, Sanders LLP, Norfolk, VA, for Defendant.

## OPINION and ORDER

FRIEDMAN, District Judge.

This matter comes before the court on the defendant's motion for summary judgment. The court has reviewed the briefs and other materials submitted by the parties and has determined that a hearing is unnecessary for the resolution of this matter. For the reasons set out fully herein, the court **GRANTS** the defendant's motion.

### I. Procedural History

On February 24, 2004, the plaintiff, Yolanda Miller, filed a two-count complaint against her former employer, Personal–Touch of Virginia, Inc. ("Personal Touch"). In Count One, the plaintiff alleges that the defendant violated her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601–2654, by terminating her prior to the conclusion of her entitled leave under the FMLA. In Count Two, the plaintiff contends that the defendant intentionally retaliated against her due to her exercise of rights under the FMLA.

The defendant filed its motion for summary judgment on October 1, 2004, and submitted various exhibits to its motion, including affidavits, documents and portions of deposition transcripts. The plaintiff filed her response on October 12, 2004, and provided similar exhibits. Finally the defendant replied on October 15, 2004. Subsequent to the filing of its motion, the defendant indicated to the court that it did not desire oral argument and requested that the court consider the matter on the submitted briefs. This matter was scheduled for trial on October 26, 2004, which did not permit time for oral argument and left little more than a week for the court to consider the issues raised. In spite of this brief period of time, the court has given this matter thorough and deliberate attention and finds that the matter is properly decided on the materials submitted and that a hearing would add little to the decisional process. On October 22, 2004, following its review of the defendant's motion, the court notified the parties of its intent to grant summary judgment and its intent to produce a written Opinion and Order explaining the decision.

For future reference, the court directs the parties attention to Local Civil Rule 56, which dictates that a motion for summary judgment must be submitted "within a reasonable time before the date of trial, thus permitting a reasonable time for the Court to ... consider the merits." E.D.V.A. Loc. Civ. R. 56. Submitting motions for summary judgment in this fashion fosters judicial economy, avoiding both the considerable expense of trial and the sincere difficulty for the court in having to forgo other matters in order to give late-filed motions their due. The court notes that the depositions relevant to this matter appear to have been completed by mid-August, such that all materials necessary for the submission of a motion for summary judgment were available some two

months before trial. The court urges the parties, in the interests of all involved, to make more timely submissions.

## II. Factual Background

Prior to her termination, the plaintiff was employed by Personal Touch as a Private Duty Nurse Supervisor. As part of her employment orientation, the plaintiff was provided with information concerning Personal Touch's policy in compliance with the FMLA. At the time of the events at issue in this case, the plaintiff was eligible for unpaid leave under the FMLA and had accrued some 144 hours of paid leave in the form of vacation, sick leave, floating holidays and personal days.

In March 2002, the plaintiff learned that she was pregnant with an expected due date of November 27, 2002. On or about August 1, 2002, the plaintiff informed her employer of this news. She contends that she told Personal Touch that she would be needing FMLA leave, but that the specifics of the leave were not discussed, nor were the dates of the expected leave. On or about September 12, 2002, following the results of a routine checkup, the plaintiff was hospitalized for two days and subsequently restricted by her doctor to working no more than six hours per day. On September 19, 2002, the plaintiff informed her employer of her need to work this reduced schedule. On September 24, 2002, the plaintiff further informed Personal Touch that she might be placed on full time bed rest, due to her progressing pregnancy and in compliance with the instructions of her doctor. Personal Touch requested that she confirm this status with her doctor.

As a result of this notice, and Personal Touch's determination that the plaintiff might soon be experiencing an FMLA qualifying event, Personal Touch provided the plaintiff with a packet of information relating to the FMLA. This packet included the Personal Touch Family & Medical Leave of Absence policy, a Request for Family / Medical Leave form ("the FMLA Request") and a Certification of Health Care Provider form ("the Provider Certification"). On September 24, 2002, the plaintiff filled out the FMLA Request in a meeting with Personal Touch employee Cayla Garcia. The completed FMLA Request reflected that the plaintiff had informed Personal Touch, on August 1, 2002, of her need to take leave due to her pregnancy and the birth of her child.

Here is where the facts alleged by the parties diverge. The plaintiff contends that during her meeting with Garcia, as well in the course of other meetings and conversations with Personal Touch employee Sheila Walton, both Garcia and Walton advised her that she could elect to substitute her accrued paid leave for unpaid FMLA leave, but that Personal Touch would not require that she do so. The plaintiff came away from these meetings with the belief that she could decline to substitute accrued paid leave for unpaid FMLA leave and instead run the two forms of leave consecutively.

The defendant disputes this version of events. The defendant claims that Garcia and Watson, in the course of several conversations that occurred before, on and after September 24, 2002, instructed the plaintiff that the FMLA entitled her to up to twelve weeks of unpaid leave for her condition. If she so chose, however, she could utilize a portion of her accrued paid leave during this time. The defendant contends that Garcia and Watson explained to the plaintiff that if she so elected to use her paid leave, this usage of paid leave would run concurrent with the twelve weeks of leave provided under the FMLA.

The plaintiff signed the FMLA Request on September 24, 2002. The start and end dates on the form were not filled in at this time as the plaintiff was not certain as to

when she would be starting her leave. Two days later, however, on September 26, 2002, the plaintiff informed Personal Touch that she was to be placed on bed rest for the last two months of her pregnancy. At this point, the start and end dates were filled in on the FMLA Request. The plaintiff maintains that she never received a copy of the FMLA Request that contained these dates. The defendant claims that the plaintiff was given a copy of the completed FMLA Request by Sheila Walton, who stated as much in an affidavit. The FMLA Request, with the dates filled in, indicated that leave under the FMLA would begin on September 26, 2002 and end December 19, 2002. The plaintiff insists, however, that in her discussions with Sheila Walton, Walton advised her that she could first use her accrued paid leave and then, and only then, would her FMLA leave begin. The plaintiff alleges that no one ever advised her as to when her FMLA leave would begin, nor did anyone ever discuss how it would be calculated in conjunction with her paid leave.

On September 27, 2002, the plaintiff returned the Provider Certification to Personal Touch, having been signed by her health care provider and confirming that the plaintiff was to be placed on bed rest for the remainder of her pregnancy. The plaintiff remained on full bed rest until she delivered her son on November 25, 2002. On December 11, 2002, Sheila Walton telephoned the plaintiff to inform her that her FMLA leave would end on December 19, 2002 and that if she could not return to work, Personal Touch could not guarantee that her position would remain open. The parties do not dispute that the plaintiff was unable to return to work on December 19, 2002, only three weeks after the delivery of her son by caesarean section.

On December 12, 2002, Personal Touch sent the plaintiff a letter confirming that her FMLA leave would end on December 19, 2002, and notifying her that if she did not return to work on this date, Personal Touch would assume that she had abandoned her position. The letter further explained that if the plaintiff had any interest in future employment with Personal Touch, she should inquire as to open positions. The plaintiff claims that she was released to return to work by her doctor on January 6, 2003, but had already had been terminated by Personal Touch at that time. According to the plaintiff, her first documented attempt to secure new employment occurred on January 22, 2003. The plaintiff contends that had her paid leave been used in addition to, and not in place of, her unpaid FMLA leave, she could have remained on leave until January 20, 2003.

### III. Issues

The issues presented by the defendant's motion are not overly complex but do require some sorting through. The defendant claims that there is no issue of fact as to whether the plaintiff received all the time due to her under the FMLA. To this end, the court notes that there is no dispute as to whether the plaintiff received twelve weeks of some form of leave; rather the issue is the characterization of this leave. The plaintiff contends that the crucial issue is whether or not Personal Touch required her to substitute her accrued paid leave for the unpaid leave she was entitled to under the FMLA. It is also not in dispute, however, that Personal Touch did not require the plaintiff to make this type of substitution. Personal Touch did permit the plaintiff to substitute paid leave for FMLA unpaid leave, and argues that there is no issue as to whether she chose to do so.

The plaintiff argues that she did not elect to substitute her paid leave for unpaid FMLA leave. In support of this claim, the plaintiff contends that Personal

Touch informed her that she could take her vacation time first, followed by twelve weeks of FMLA unpaid leave. The plaintiff also relies on the contents of the FMLA Request to support of this position. Additionally, the plaintiff argues that Personal Touch permitted her to take unpaid FMLA leave intermittently with her accrued paid leave. The plaintiff concludes, then, under either the substitution or the intermittent leave argument, that Personal Touch wrongfully substituted her accrued paid leave for her unpaid FMLA leave.

The court must resolve whether an issue of fact exists as to whether the plaintiff elected to substitute paid leave for unpaid FMLA leave and whether Personal Touch wrongfully substituted paid leave for unpaid FMLA leave, thus shortening the total amount of leave to which the plaintiff was entitled. These questions turn on whether Personal Touch notified the plaintiff that all of her leave was taken for an FMLA qualifying reason.

The plaintiff's argument that she did not elect to substitute paid leave assumes that her FMLA leave commenced after the exhaustion of her paid leave. In contrast, her argument that she used her unpaid FMLA leave intermittently assumes that the FMLA leave commenced at the start of her bed rest and was interrupted by periods of paid leave that did not subtract from her FMLA entitlement of twelve weeks. The court will consider each argument in the alternative. Finally, even if Personal Touch failed to notify the plaintiff that she was taking her accrued paid leave concurrently with her entitled FMLA leave, the court must determine whether an issue of fact exists as to whether the plaintiff's rights under the FMLA were prejudiced.

## IV. Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,* 763 F.2d 604, 610 (4th Cir.1985). The court must assess the evidence and draw all permissible inferences in the nonmovant's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Nevertheless, the nonmovant must make a sufficient evidentiary showing on each element of her claims such that a jury could reasonably find in her favor. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. In order for the nonmoving party to survive summary judgment, she must present evidence that is "significantly probative." *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. 2548. If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson,* 477 U.S. at 249–250, 106 S.Ct. 2505. District courts have an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (citing *Celotex Corp.,* 477 U.S. at 323–25, 106 S.Ct. 2548).

Summary judgment does not require that no factual issues be in dispute. To find against the defendant in this case, the court must find both that the facts in dispute are material and that the disputed issues are genuine. In order to be material, the factual dispute must be dispositive of the claim. *See Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995). Similarly,

the genuineness of the factual dispute must be more than a dispute based on speculation or inference. *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. 2548; *Runnebaum v. NationsBank of Md., N.A.,* 123 F.3d 156, 164 (4th Cir.1997). When the motion is supported by affidavits, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Cray Communications Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393–94 (4th Cir.1994).

## V. Discussion

The court finds that the plaintiff has failed to produce evidence by which a reasonable jury could return a verdict in her favor. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. To dispense with the second claim in her complaint first, the plaintiff fails to even discuss her claim of retaliatory termination. As it is the plaintiff's responsibility to counter the motion for summary judgment with evidence of retaliation by the defendant, her failure to proffer any evidence whatsoever in support of this claim causes the court to conclude that she has failed to meet her burden of proof. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505; *Allen v. Rumsfeld,* 273 F.Supp.2d 695, 703 (D.Md.2003); *see also Chaffin v. John H. Carter Co.,* 179 F.3d 316, 319 (5th Cir.1999) (noting requirement that plaintiff establish prima facie case of retaliation in order to defeat summary judgment).

Pursuant to the following discussion, the court also finds that summary judgment is warranted on the plaintiff's claim that Personal Touch infringed upon her rights under the FMLA. The court first determines that there are no genuine issues of fact as to whether the plaintiff elected to substitute a portion of her paid leave during the twelve weeks of FMLA leave and whether Personal Touch was therefore entitled to run her accrued paid leave concurrent with her period of FMLA leave. As a matter of law, the defendant provided adequate no-

tice that the plaintiff's entire period of leave was being taken for an FMLA qualifying reason and specifically informed her that she was entitled to take up to twelve weeks of FMLA leave for her medical condition. There is no issue that the FMLA leave commenced on September 26, 2002, contrary to the plaintiff's claim that it began following the expiration of her paid leave. That the parties differ significantly with respect to what the plaintiff was told regarding her leave does not prevent the granting of summary judgment as these differences do not raise issues of material fact necessary to the disposition of this matter. *See Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. 2548. Moreover, the evidence offered by the plaintiff in support of her motion, which consists of her deposition testimony and the contents of the FMLA Request is not "significantly probative." *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. 2548.

Additionally, the court finds that the plaintiff's claim that she was permitted to take unpaid FMLA leave intermittently with paid leave misapprehends the nature of intermittent FMLA leave. The plaintiff also failed to satisfy the notice requirements for obtaining this type of leave. Her reliance on Personal Touch's policy of permitting intermittent leave to be taken in certain situations does not satisfy her burden of establishing that a genuine issue of fact exists as to whether her FMLA leave extended beyond her termination date. Finally, even if Personal Touch failed to properly notify the plaintiff that it considered her usage of paid leave as part of her FMLA entitlement, summary judgment is appropriate as the plaintiff has failed to establish that the lack of notice prejudiced her rights under the FMLA.

### A. Family Medical Leave Act

Congress enacted the FMLA in 1993 for the purpose of allowing employees to bal-

ance work and family life by taking reasonable unpaid medical leave for medical reasons or for the birth or care of a child. 29 C.F.R. § 825.101. An eligible employee is entitled to a total of twelve workweeks of leave during any twelve-month period, and her position must be held available for her during the period of leave. 29 C.F.R. § 825.200. The FMLA seeks to accomplish its purposes "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3). Pursuant to the FMLA, "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1).

The FMLA regulations set out a comprehensive scheme of notification that employers must follow. While the FMLA does not impose any specific requirements for the type or timing of notice to be given an employee upon the designation of FMLA leave, the Department of Labor's regulations address this gap. *See* 29 C.F.R. § 825.208; *Smith v. Blue Dot Servs. Co.*, 283 F.Supp.2d 1200, 1202 (D.Kan.2003). The regulations require "employers to inform workers about the relationship between the FMLA and leave granted under company plans." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 87, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002). Section 825.208 of the FMLA regulations provides that "[i]n all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA qualifying, and to give notice of the designation to the employee." 29 C.F.R. § 825.208. This notice may be oral or in writing, but if the employer chooses to give oral notice, it must confirm it in writing in any form. *Id.* Section 825.208(c) prohibits an employer from designating paid leave as FMLA leave retroactively and provides that if the employer requires paid leave to be substituted for unpaid leave, the employer may only designate

such leave as FMLA leave from the date of the notification to the employee forward. 29 C.F.R. § 825.208(c).

Section 825.700 addresses the effect of the FMLA on employer leave policies that provide greater leave entitlements than provided under the FMLA. The section provides that "[a]n employer must observe any employee benefit program or plan that provides greater family or medical leave rights to employees than the rights established by the FMLA." The section continues:

> If an employer provides greater unpaid family leave rights than are afforded by FMLA, the employer is not required to extend additional rights afforded by FMLA, such as maintenance of health benefits (other than through COBRA), to the additional leave period not covered by FMLA. If an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement.

29 C.F.R. § 825.700.

■ Sections 825.208 and 825.700, thus, prohibit employers from designating leave taken pursuant to some other employee policy as FMLA leave unless the employee is first so notified.

B. Personal Touch Leave Policies and Notice Provided to Plaintiff

■ Under the FMLA regulations there is a direct connection between the employer's proper designation of paid leave as part of the FMLA twelve-week entitlement and the notice of this designation provided to the employee. This notice may be accomplished in any written form. Accordingly, whether the plaintiff had notice that her FMLA leave commenced with the start of her bed rest is relevant to the

viability of her claim that she took paid leave followed by unpaid FMLA leave.

The court turns, then, to the undisputed facts concerning the notice that the plaintiff received. There is no dispute that the plaintiff received, on September 24, 2002, a Personal Touch information packet, comprised of the Family & Medical Leave of Absence policy, the FMLA Request and the Provider Certification. Similarly, there is no dispute that on September 24, 2002, the plaintiff signed her acknowledgment of these materials and completed the FMLA Request.

The Personal Touch Family & Medical Leave of Absence policy establishes that FMLA benefits of up to twelve (12) weeks within any twelve-month period are offered for such reasons as the birth of a child and when an employee is unable to work because of health conditions. The FMLA Policy provides that leave for birth of a child may begin prior to birth as circumstances dictate. To qualify for medical leave, the condition must be such that it requires the plaintiff to be absent from work on a recurring basis or for more than a few days for treatment or recovery. The Personal Touch FMLA policy distinguishes between leave and unpaid leave, providing that an employee's pay will be reduced for all full days of unpaid leave taken. With respect to intermittent leave, the FMLA policy provides that an employee may take leave intermittently or on a reduced work schedule in the case of a serious health condition. When the need for intermittent leave arises due to the birth of a child, however, an employee may take such leave only with the joint approval of the employee and Personal Touch.

The Personal Touch FMLA policy provides that an employee seeking FMLA leave is required to provide advanced notice and appropriate medical certification. This certification must provide the date the serious health condition began, the du-

ration of the condition and, if applicable, the medical reasons verifying the need for intermittent leave or a reduced work schedule. Nothing is contained in this FMLA policy with respect to substituting paid leave for FMLA unpaid leave.

In support of her claim that Personal Touch did not require her to use her paid leave concurrent with her FMLA leave, the plaintiff relies heavily on the language contained in the FMLA Request, completed by her on September 24, 2002. The FMLA Request revealed that the plaintiff notified Personal Touch on August 1, 2002 of her need to take FMLA leave due to the anticipated birth of her child. The FMLA Request, signed by the plaintiff, indicated that "[t]he requested leave will be counted against your annual FMLA leave entitlement." The plaintiff effectively ignores this provision in her opposing memorandum, relying instead on the portion of the FMLA Request that provided that Personal Touch "will not require that you substitute accrued paid leave for unpaid FMLA leave." This provision went on to state, however, that "[y]ou may elect to substitute accrued paid leave for unpaid FMLA leave." The FMLA Request further provided that Personal Touch would require the plaintiff to furnish medical certification of her condition by September 27, 2002.

The plaintiff did submit the Provider Certification to Personal Touch on September 27, 2002. Although the plaintiff argues that this certification had nothing to do with when leave under the FMLA commenced, the Provider Certification itself expressly referenced its association with the Family and Medical Leave Act of 1993. Moreover, the plaintiff's health care provider indicated on the certification that the serious health condition being certified, "under the Family and Medical Leave Act," was a pregnancy. Attached to the Provider Certification, for the health care

provider's reference, was a list of "serious health conditions" provided pursuant to a pamphlet entitled "Administering the FMLA to Ensure Proper Regulatory Compliance." The Provider Certification also provided that "[h]ere and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave." On the certification, the plaintiff's health care provider indicated that the plaintiff's pregnancy required full bed rest and that she was unable to work. The Provider Certification also contained a question relating to whether the patient would need intermittent or part-time care. The health care provider declined to respond to this question; rather the health care provider indicated that the plaintiff was unable to perform work of any kind and required full bed rest for the duration of her pregnancy. Thus, there is no dispute that the Provider Certification was for purposes of ensuring FMLA compliance, or that the plaintiff's health care provider determined that her pregnancy constituted a "serious health condition" under the FMLA.

The question of whether the required FMLA notice was given, and if so, what the notice consisted of and when it was given, is one of fact. The question of whether the notice satisfied the statutory requirements, however, is one of law. *See Cavin v. Honda of America Mfg., Inc.,* 346 F.3d 713, 723 (6th Cir.2003) (describing notice requirements in context of FMLA claim). In this case, there is no dispute as to the form, content, issuance and timing of the written notice provided to the plaintiff. Personal Touch provided the plaintiff with a packet that contained documents specifically addressing her rights under the FMLA. The FMLA Request form indicated that the time off related to the plaintiff's pregnancy would be considered FMLA leave. Also, the Provider Certification that the plaintiff was required to obtain from her health care provider as a condition of taking leave was specifically directed toward the FMLA.

Accordingly, it is clear that the various forms of written notice apprised the plaintiff that all of the leave taken due to her pregnancy counted toward her FMLA entitlement. So long as the disclosure was in writing, there is no particular form it must take. *See* 29 C.F.R. § 825.208. Thus, the court finds that there is no issue as to when the plaintiff's FMLA period commenced because the notice given was sufficient as a matter of law. *See Cavin,* 346 F.3d at 723.

## C. Substitution Requirement

Personal Touch permits employees to substitute their accrued paid leave for a portion of their entitled period of FMLA unpaid leave, but does not require them to do so. The proffered intent of this substitution policy is that an employee has the option of either using her accrued paid leave during the FMLA leave period, so that she continues to receive pay for a portion of this time, or saving this accrued leave for when she returns to work. The plaintiff argues that she did not elect to make this substitution as it was her understanding that she could use her paid vacation first, followed by the FMLA unpaid leave.

The viability of this argument depends in part on whether the plaintiff received notice that all of her leave was designated as FMLA leave. *See* 29 C.F.R. § 825.208 (stating that once employer has knowledge that leave is being taken for FMLA required reason, employer must notify employee that paid leave is designated and will be counted as FMLA leave). If the plaintiff had notice that all of her leave was being taken for an FMLA qualifying reason, Personal Touch was permitted to consider all such leave as FMLA leave, regardless of whether it was paid or not.

*See* 29 C.F.R. § 825.208. As discussed above, Personal Touch did provide adequate notice that all of the plaintiff's leave was FMLA qualifying.

The plaintiff maintains that even if all of her leave was taken due to her medical condition, Personal Touch did not require her to substitute her paid leave. There is no question, however, that the plaintiff chose to use her paid leave during this time of leave. The plaintiff admitted during her deposition testimony that she chose to use her accrued paid leave during her period of bed rest. *See* Deposition of Yolanda Miller at 76. The court determines that the Personal Touch substitution policy, interpreted with reference to the guiding FMLA regulations, did not permit the plaintiff to utilize her paid leave in a fashion that would result in greater than twelve weeks of leave for the same FMLA qualifying reason.

The plaintiff relies heavily on the provision in the FMLA Request that permitted an employee to elect to substitute paid leave for FMLA unpaid leave, but does not require an employee to do so. In so relying on the FMLA Request, however, the plaintiff cannot ignore its other provisions, one of which clearly stated that any leave taken pursuant to the serious medical condition for which FMLA leave was to be granted would be counted against the employee's total FMLA entitlement of twelve weeks.

■ Additionally, even viewing the facts in the light most favorable to the plaintiff and disregarding Walton's version of events that she told the plaintiff that paid leave and unpaid FMLA must run concurrently, the court finds that the version of events offered by the plaintiff is immaterial and untenable. The plaintiff's asser-

tions that Personal Touch told her orally that her paid leave could be used in addition to her FMLA unpaid leave are immaterial because it is the written designation of paid leave as unpaid leave that is important for purposes of the FMLA. *See* 29 C.F.R. § 825.208. Furthermore, an overestimate of leave by an officer or agent of an employer covered by the FMLA does not provide the basis for a cause of action under the FMLA. *See Kelso v. Corning Cable Sys. Int. Corp.*, 224 F.Supp.2d 1052 (W.D.N.C.2002). As has been discussed, the plaintiff's reliance on the FMLA Request form does not support her view.

Even examining the leave usage from the plaintiff's perspective, treating paid leave as distinct from FMLA leave, the record and the plaintiff's own statements belie her claim that she was told she must use all of her paid leave and then, and only then, would she be permitted to use her twelve weeks of FMLA leave. The plaintiff's internal leave record and her own Exhibit O [1] indicate that unpaid leave was interspersed with the usage of paid leave. Specifically, Exhibit O indicates that FMLA leave was used on September 26, 2002, followed by six days of vacation, followed by three days of FMLA leave, followed by seven days of vacation, followed by three more days of FMLA, followed by seven days of vacation, and then followed by the remainder of the plaintiff's FMLA time.

Throughout her deposition in this matter, the plaintiff revealed that she was confused as to when and how her FMLA leave operated. She stated that she understood the Request for Family/Medical Leave form to cover the time period after she went into labor. *See* Deposition of Yolanda Miller at pg. 56. She claims that

---

1. This exhibit has resulted in no small amount of angst on the part of the defendant, who has submitted the responsive affidavit of Sheila Walton. Walton denies that the leave calendar presented as Exhibit O was ever created by Personal Touch.

she did not know that FMLA leave would apply if she left work prior to the time she went into labor. *See id.* The plaintiff admitted, however, that she spoke with Sheila Watson after being placed on bed rest about how she wanted her vacation to be allocated. *See* Deposition of Yolanda Miller at 96. Although she could not remember the specific allotments, she claimed that her paid leave was to be exhausted first, followed by her FMLA leave. *See id.* Her response to the motion for summary judgment indicates to the contrary; that the plaintiff chose to use her paid time in the following increments: 48 hours for the October 4, 2002, payroll, and 56 hours for the two week payroll periods of October 18, 2002 and November 1, 2002. As the plaintiff was on a forty-hour a week schedule, it is clear that she did not exhaust her paid leave before dipping into FMLA leave, even assuming this was an option. Thus, the evidence, produced by the plaintiff, that she instructed Walton to intermix her paid leave and unpaid FMLA leave contradicts her deposition testimony that she believed she was using all of her paid leave, followed by FMLA leave and that she believed FMLA covered the birth of her child, rather than her entire period of bed rest.

Furthermore, assuming the truth of the plaintiff's version of what she was told by Walton and Garcia, her reliance on these representations does not entitle her to additional leave. An analogous argument to this effect was rejected by the court in *Kelso v. Corning Cable Sys. Int. Corp.*, 224 F.Supp.2d 1052 (W.D.N.C.2002). In *Kelso*, the plaintiff worked for an employer who had an express policy of substituting any existing paid vacation for unpaid FMLA leave and noted that this substitution did not extend the twelve week leave period. The plaintiff in *Kelso* notified his employer that he needed to take leave under FMLA to care for his ailing spouse. An FMLA medical certification form was provided by a doctor for the plaintiff's wife. *See Kelso*, 224 F.Supp.2d at 1052. In response to his FMLA request, a representative of his employer sent the plaintiff a letter stating, in error, that his FMLA leave would begin after the expiration of his vacation time. *See id.* The plaintiff alleged an FMLA violation based on the representative's action in misinforming him as to the amount of leave he could take, just as in the instant case. *See id.* at 1056. The court determined, however, that "[a]n overestimate of leave by an officer or agent of an employer covered by the FMLA does not provide the basis for a cause of action under the FMLA." *Id.*

The court also found that even if the plaintiff could have shown that he was entitled to a greater total of leave, based on the representative's error rather than the statutory twelve weeks that he received, "the plaintiff suffered no loss, inasmuch as the leave was uncompensated." In the instant case, just as in *Kelso*, any additional leave that the plaintiff would have obtained would have been uncompensated as she had exhausted all of her paid leave. Furthermore, as in *Kelso*, the plaintiff in this case was not able to return to work during the twelve-week period of FMLA leave or structure this leave any differently. *See id.* at 1057. Thus, the statements of Walton and Garcia are immaterial in determining the calculation of the plaintiff's FMLA leave.

Similarly, in *Cox v. Autozone, Inc.*, 990 F.Supp. 1369, 1371 (M.D.Ala.1998), the plaintiff took a thirteen-week period of temporary disability leave because of a pregnancy. Following her return to work, the plaintiff was demoted. She filed suit under the FMLA, and contended that her employer never told her that she was using up her twelve weeks of FMLA leave, thus she should have been permitted to

take thirteen weeks of paid leave, followed by twelve weeks of unpaid leave.

■ As in the instant case, in *Cox*, a dispute existed over the interpretation of the employer's internal leave policy. *See Cox*, 990 F.Supp. at 1373. The *Cox* court found such a dispute to be immaterial, however, finding instead that the plaintiff had misconstrued the purpose of the FMLA. *See id.* The court found that plaintiff, in contending that she had thirteen weeks of paid leave and twelve weeks of unpaid leave, was "in effect, converting FMLA from a statute which provides a minimum, a baseline, of federally-mandated unpaid leave, into a statute which mandates an additional [twelve] weeks of leave for all employees, even those who already have employer-provided leave." *Id.* The court found this to be inconsistent with the text of the FMLA. *See id.*

Section 2612(d)(2), upon which the Personal Touch policy is patterned, "exists so that the employee may not be told that leave must be taken as unpaid, when she has an alternative employer-provided paid leave available." *Id.* at 1374. In the instant case, as in *Cox*, the plaintiff elected to take her paid leave during her FMLA qualifying absence from work. *See* Deposition of Yolanda Miller at 76. As in *Cox*, the plaintiff "[n]ow … attempts to use this provision [2612(d)(2)] to stand the FMLA on its head, arguing that it gives to her a presumptive right to take twelve weeks of unpaid leave" following her receipt of some 144 hours of paid leave.

Section 825.207(f) of the FMLA regulations provides that when there is no notice as to the designation of the leave, "the employee will remain entitled to all the paid leave which is earned or accrued under the terms of the employer's plan." 29 C.F.R. § 825.207(f). The regulations say nothing, however, about the situation presented in the instant case, "where the employee takes her paid leave first, and attempts to stack unpaid leave on top of that for the same reason." *Cox*, 990 F.Supp. at 1375.

The court finds that the reading of the FMLA to guarantee only a total of twelve weeks is consistent with the general nature of the statute. *See Cox*, 990 F.Supp. at 1376; *see also* 29 U.S.C. § 2612(d)(1) (noting that when employer provides leave short of twelve weeks required, FMLA adds on "the additional weeks of leave necessary to attain the 12 workweeks"); *see also Strickland v. Water Works and Sewer Bd.*, 239 F.3d 1199, 1204 (11th Cir. 2001) (noting that allowing employees to use paid leave and FMLA leave consecutively would "unduly and unfairly" burden employers). An employer may require the employee to substitute any period of accrued vacation, sick, or other leave for any part of the twelve-week period of FMLA leave. 29 U.S.C. § 2612(d)(2)(A). There is no dispute that Personal Touch did not require the plaintiff to make this substitution, but permitted her to do so. An employee requesting or notifying an employer of an intent to use paid leave for an FMLA qualifying purpose does not need to expressly assert her right to do so. 29 C.F.R. § 825.208. Thus, an employee who attempts to use paid leave for a reason covered by the FMLA, when so notified that the reason is FMLA qualifying, elects to substitute paid leave in this manner. *See id.* It is beyond dispute that this is what the plaintiff attempted to do.

■ In summary, there is no issue as to whether the plaintiff had notice that all of her leave was taken for the same FMLA qualifying reason. The statements that may have been made by Personal Touch representatives that led the plaintiff to believe she could structure her forms of leave are immaterial, as it is the written notice of the characterization of the leave that is determinative. As this notice may

be in any form, the court finds that the number of documents given to the plaintiff that expressly informed her that all of her leave was being taken for an FMLA qualifying reason were sufficient for the plaintiff to realize that all of her leave was designated as FMLA leave, whether paid or unpaid. Furthermore, substitution of paid leave under the FMLA is not intended to extend the total leave period beyond the twelve weeks guaranteed under the FMLA. Finally, to the extent that the plaintiff relies on an internal Personal Touch substitution policy as the source of the alleged requirement, violation of an employer's internal policy does not itself support a statutory FMLA violation. *See Whitney v. Wal–Mart Stores, Inc.*, 2003 WL 22961210 at *9, 2003 U.S. Dist. Lexis 22626 *30 (D. Maine 2003). The court concludes that the taking of any leave for an FMLA qualifying reason, when the employee has notice that the leave is being taken for this reason and decides to use paid leave during this period, constitutes an elected substitution of paid leave, in spite of the plaintiff's belief to the contrary.

### D. Intermittent FMLA Usage

■ The plaintiff also argues that because she was not required to substitute paid leave for unpaid FMLA leave, she could use FMLA leave intermittently during her bed rest. This argument forces the plaintiff to acknowledge that her FMLA qualifying leave began on September 26, 2002. She maintains that her unpaid FMLA leave was interrupted with periods of paid leave that did not count toward her FMLA allotment.

Section 825.117 of the FMLA regulations states that "[f]or intermittent leave ... there must be a medical need for leave ... and it must be such that a medical need can best be accommodated through an intermittent treatment." 29 C.F.R. § 825.117. Such a need must be certified in the health care provider's certification of a serious health condition required in section 825.306. *See id.;* 29 C.F.R. § 825.306. Section 825.117 further provides that "[e]mployees needing intermittent FMLA leave ... must attempt to schedule their leave so as not to disrupt the employer's operation."

The Supreme Court, in *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002), provided guidance as to the purpose of intermittent leave:

Consider, for instance, the right under [section] 2612(b)(1) to take intermittent leave when medically necessary. An employee who undergoes cancer treatments every other week over the course of 12 weeks might want to work during the off weeks, earning a paycheck and saving sick weeks for later. If she is not informed that her absence qualifies as FMLA leave—and if she does not know of her right under the statute to take intermittent leave—she might take all 12 of her FMLA-guaranteed weeks consecutively and have no leave remaining for some future emergency.

*Ragsdale*, 535 U.S. at 89–90, 122 S.Ct. 1155. This passage indicates, as also appears to be clear from the federal regulations interpreting the FMLA, that intermittent leave is designed to be interspersed with periods of work, not with periods of other leave as the plaintiff contends she attempted to do. *See* 29 C.F.R. §§ 825.117, 825.207(f).

It is beyond dispute that all of the plaintiff's leave was being taken for an FMLA qualifying reason, as evidenced from her deposition testimony, the FMLA Request, the Certification and all other sources of evidence. Once this reason was evident and made clear to the plaintiff, it is beyond the intent of the FMLA to have permitted the plaintiff to switch back and forth, be-

tween FMLA unpaid leave and paid leave not taken pursuant to the FMLA, when the reason for either form of leave was the same—complications due to and following her pregnancy. *See also* 29 C.F.R. § 825.302(f) (noting that employee must advise employer of reasons why intermittent / reduced leave is necessary and noting that "[t]he employee and employer shall attempt to work out a schedule which meets the employee's needs without unduly disrupting the employer's operations"); *see also* 29 C.F.R. § 825.204 (noting that intermittent leave may be taken for condition that requires periodic treatment, rather than one continuous period); 29 C.F.R. § 825.205 (providing that amount of intermittent leave is calculated by leave actually taken).

Section 825.302 further contemplates notice by the employee that intermittent leave is needed. *See Whitney*, 2003 WL 22961210 at *9, 2003 U.S. Dist. Lexis 22626 *30. Additionally, Personal Touch's FMLA policy provides that intermittent leave taken for the birth of a child must be approved both by the employee and Personal Touch. The Provider Certification completed by the plaintiff's health care provider indicated that the medical need for which the plaintiff required leave was, indeed, her pregnancy. Accordingly, the plaintiff would have been required to provide notice and obtain employer approval prior to taking intermittent leave. There is nothing in the record that indicates she attempted to do so.

Personal Touch's intermittent leave policy appears in every respect to accord with the interpretation given intermittent leave by FMLA regulations. The plaintiff's purported structuring of her paid leave and FMLA leave did not constitute intermittent use of FMLA leave as the leave amounted to one continuous period for the same medical need. Such leave cannot, as a matter of law, be characterized as inter-mittent such that the plaintiff could intersperse paid leave with unpaid. FMLA leave. Moreover, the plaintiff provided no notice that she intended to operate her leave in this manner.

### E. Failure to Notify / Designate

■ Finally, even assuming by that the plaintiff did not receive adequate notice that Personal Touch considered her FMLA leave period to commence on September 26, 2002, and to run concurrent with her paid leave, and only learned of this in her subsequent conversation with Watson on December 11, 2002, the plaintiff identifies no prejudice stemming from this retroactive designation.

The Supreme Court, in *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002), abrogated the categorical penalty found in section 825.700 that prohibited an employer from retroactively designating leave as FMLA leave before such notification is given to the employee. The Supreme Court found that an employee who had been given thirty weeks of leave was not entitled to an additional twelve weeks under the FMLA, even though the plaintiff was unaware that the thirty weeks included her FMLA leave. *See id.* at 1165. The Court declared that section 825.700 exceeded the scope of the FMLA and relieved employees of the burden of proving any real impairment to their rights and resulting prejudice from the failure of the employer to provide notification. *Id.* at 174, 122 S.Ct. 1155.

*Ragsdale* recognized that the FMLA prohibits an employer from interfering with or restraining the exercise of the right of an employee to take up to twelve weeks of leave and return to the same or an equivalent position. 29 U.S.C. § 2615(a)(1); *Ragsdale*, 535 U.S. at 87, 122 S.Ct. 1155. *Ragsdale* further noted that

the FMLA encourages employers to go beyond its requirements and establish more generous leave policies. 29 U.S.C. § 2653. "As long as these policies meet the Act's minimum requirements, leave taken may be counted toward the 12 weeks guaranteed by the FMLA." *Ragsdale*, 535 U.S. at 87, 122 S.Ct. 1155. To prevail under her cause of action, then, the Supreme Court held that an employee must prove that her employer violated the FMLA by interfering with, restraining, or denying her exercise of rights under the FMLA. *Id.* at 89, 122 S.Ct. 1155.

The Supreme Court's decision in *Ragsdale* did not decide whether the notice requirements in the regulations were valid, rather it focused only on the penalty provision of section 825.700. Other courts in interpreting *Ragsdale* have extended its holding to the requirement of notice and penalty provision in section 825.208(c), upon which the plaintiff relies. *See Katekovich v. Team Rent a Car of Pittsburgh, Inc.*, 36 Fed.Appx. 688, 691 (3rd Cir.2002) (finding that plaintiff was not entitled to more leave based on failure to notify pursuant to section 825.208); *Donahoo v. Master Data Center*, 282 F.Supp.2d 540, 555 (E.D.Mich.2003) (granting summary judgment for employer and finding that failure to comply with notice provisions did not entitle plaintiff to additional leave); *Holmes v. e.spire Communications, Inc.*, 135 F.Supp.2d 657, 665 (D.Md.2001) (relying on lower court opinion in *Ragsdale* and finding that absence of notice is not, in and of itself, a violation of the FMLA).

The *Holmes* court, in reviewing the appellate court opinion in *Ragsdale*, recognized that prejudice could occur if the lack of notice prevented the employee from exercising her right to return to work at the end of the twelve weeks or if the failure to give notice interfered with the ability of the employee to plan and use future FMLA leave. *See Holmes*, 135 F.Supp.2d

at 665 n. 9 (finding that crucial inquiry was whether failure to give notice interfered with, restrained, or denied plaintiff ability to exercise any right provided by FMLA). The question left for the court to resolve is whether a triable issue exists as to whether Personal Touch's alleged delayed or failed notification somehow prejudiced the plaintiff's FMLA rights. *See Donahoo*, 282 F.Supp.2d at 555; *Kelso*, 224 F.Supp.2d at 1057.

*Ragsdale* instructs the court to take into consideration the reality of what would have happened had the notice been given, including whether or not the employee would have returned to work after taking leave. *See Ragsdale*, 535 U.S. at 88–91, 122 S.Ct. 1155. There is no issue as to whether delayed or failed notice prevented the plaintiff from returning to work. Personal Touch informed the plaintiff on December 11, 2002 that her FMLA leave was soon to expire and that she must return to work in order to retain her position. Although the plaintiff disputed the leave calculations made by the defendant, she was given notice of her right to return to work, and Personal Touch did not in any way impair this right. The plaintiff chose not to return because she was medically unable to do so. *See Holmes*, 135 F.Supp.2d at 666 (finding that based on plaintiff's own deposition testimony, plaintiff was not able to return to work within twelve week period); *see Wright v. Owens–Illinois, Inc.*, 2004 WL 1087359 at *10, 2004 U.S. Dist. Lexis 8535 *30 (S.D.Ind.2004) ("after *Ragsdale*, lack of notice of FMLA designation is irrelevant if a plaintiff cannot make a showing of prejudice"). There is also no issue with respect to whether the delayed or failed notice interfered with the plaintiff's right to plan her usage of FMLA time. The plaintiff received a full twelve weeks of leave beginning September 26, 2002. She could not have structured this leave in any different fashion as she was medically restricted to bed rest.

"The FMLA ... does not provide a remedy for broken promises or deviation from policy. The FMLA is a 'balancing' act, an attempt to provide employees with some leave, 'a reasonable leave,' without completely ignoring the legitimate 'demands of the workplace.'" *Holmes,* 135 F.Supp.2d at 666 (quoting 29 U.S.C. §§ 2601(b)(1) & (2)). Following expiration of the twelve week period, Personal Touch had no responsibility to restore the plaintiff to her prior position. *See Stopka v. Alliance of Amer. Insurers,* 1996 WL 717459, 1996 U.S. Dist. Lexis 18329 (N.D.Ill.1996).

### VI. Conclusion

The FMLA prohibits an employer from impeding the exercise of an employee's right to entitled leave. It is not intended to enable an employee to sue for failure to give notice, unless such failure impeded the exercise of FMLA rights. *See Roberson v. Cendant Travel Services, Inc.,* 252 F.Supp.2d 573, 577 (M.D.Tenn.2002).

The FMLA does not give the plaintiff license to ignore the fact that her condition requiring bed rest constituted an FMLA qualifying reason. There is no issue of fact as to whether she received the necessary notification that any leave taken pursuant to her pregnancy was considered FMLA leave by Personal Touch. Thus, as a matter of law, her FMLA leave commenced at this time. Similarly, her argument with respect to intermittent leave fails. The FMLA provisions for use of intermittent leave are not intended to allow for alternating use of paid and unpaid leave so as to extend the total entitlement of twelve weeks permitted under the FMLA.

Even assuming Personal Touch properly failed to notify the plaintiff of the character of her leave, Personal Touch did not deny the plaintiff her rights under the FMLA. The plaintiff received the full twelve week entitlement in 2002, and her job was held open for this duration. She was unable to return to work when this leave ended, and she has presented no evidence that she would or even could have structured her leave differently had she been aware of the concurrent running of FMLA and her paid leave. The plaintiff cannot expect a windfall when Personal Touch has complied with the FMLA in respect to her rights under it. *See Kelso,* 224 F.Supp.2d at 1057. Accordingly, the court **GRANTS** the defendant's motion for summary judgment.

The Clerk is **REQUESTED** to mail copies of this Order to counsel for all parties.

**IT IS SO ORDERED.**